[859 NE2d 503, 825 NYS2d 697]

Paul M. Morris, Appellant, v Schroder Capital Management International et al., Respondents.

Argued October 10, 2006; decided November 21, 2006

**POINTS OF COUNSEL**

*Frank H. Wright & Associates, P.C.,* New York City (*Frank H. Wright* and *Robert M. Sanchez* of counsel), for appellant. I. The correct standard for involuntary termination in employee choice cases is "continued willingness to employ" in the same or a comparable job. (*American Broadcasting Cos. v Wolf,* 52 NY2d 394; *BDO Seidman v Hirshberg,* 93 NY2d 382; *Wolff v Wolff,* 67 NY2d 638; *Matter of Long Is. Gastrointestinal Disease Group [Good—Dolgin],* 251 AD2d 330; *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496; *Last v New York Inst. of Tech., N.Y. Coll. of Osteopathic Medicine,* 219 AD2d 620; *Genesis II Hair Replacement Studio v Vallar,* 251 AD2d 1082; *Ken J. Pezrow Corp. v Seifert,* 197 AD2d 856, 83 NY2d 798; *Windshield Installation Network v Goudreau,* 237 AD2d 694; *Ticor Tit. Ins. Co. v Cohen,* 173 F3d 63.) II. The constructive discharge test of objectively intolerable working conditions is not the correct test for involuntary termination under the employee choice doctrine. (*International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613; *Halbrook v Reichhold Chems., Inc.,* 735 F Supp 121; *Best v Peninsula N.Y. Hotel Mgt.,* 309 AD2d 524; *Fischer v KPMG Peat Marwick,* 195 AD2d 222; *Granser v Box Tree S.,* 164 Misc 2d 191.)

*Pillsbury Winthrop Shaw Pittman LLP,* Washington, D.C. and New York City (*Christine N. Kearns, Julia E. Judish* and *E. Leo Milonas* of counsel), for respondents. I. The New York employee choice doctrine is well-established. (*Simons v Fried,* 302 NY 323; *Kristt v Whelan,* 5 NY2d 807; *Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84; *Sarnoff v American Home Prods. Corp.,* 798 F2d 1075; *Schlumberger Tech. Corp. v Blaker,* 859 F2d 512.) II. New York has a strong public policy in favor of enforcing contracts. (*Mohawk Maintenance Co. v Kessler,* 52

NY2d 276; *Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.,* 86 NY2d 685.) III. The New York constructive discharge standard is applied both within and outside the employment discrimination context. (*Matter of Imperial Diner v State Human Rights Appeal Bd.,* 52 NY2d 72; *Whidbee v Garzarelli Food Specialties, Inc.,* 223 F3d 62; *Baker v Board of Educ. of W. Irondequoit Cent. School Dist.,* 70 NY2d 314; *Kader v Paper Software, Inc.,* 111 F3d 337; *Sims v City of New London,* 738 F Supp 638; *International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613.) IV. New York's employee choice doctrine does not require a test for involuntary termination short of the constructive discharge standard. (*Horn v New York Times,* 100 NY2d 85; *International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613; *Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.,* 86 NY2d 685; *Mohawk Maintenance Co. v Kessler,* 52 NY2d 276.) V. Appellant's proposed alternative standard conflicts with New York law and is unworkable. (*Rudman v Cowles Communications,* 30 NY2d 1; *Horn v New York Times,* 100 NY2d 85; *Lobosco v New York Tel. Co./NYNEX,* 96 NY2d 312; *Murphy v American Home Prods. Corp.,* 58 NY2d 293.)

### OPINION OF THE COURT

PIGOTT, J.

Paul M. Morris commenced this action against his former employer in federal district court alleging breach of contract for failure to pay him certain deferred compensation benefits. The United States District Court for the Southern District of New York dismissed the complaint for failure to state a claim, finding that Morris forfeited his rights to the benefits under various deferred compensation plans which, among other things, included a covenant not to compete (2005 WL 167608, 2005 US Dist LEXIS 1017 [2005]). The District Court held that because Morris failed to state a claim of constructive discharge, the covenant not to compete was valid pursuant to the employee choice doctrine, which permits enforcement without regard to the covenant's reasonableness.

Upon appeal, the United States Court of Appeals for the Second Circuit certified to this Court the question of whether the constructive discharge test is the appropriate legal standard to apply when determining whether an employee voluntarily or involuntarily left his employment for purposes of the employee choice doctrine. We conclude that it is.

## I.

Morris was hired by defendant Schroder Capital Management International,[1] an investment banking and asset management company, in January 1997. In his position as senior vice-president and head of domestic equities, he was responsible for investment management, as well as the management and expansion of SIMNA's United States equity research operations. He was paid an annual salary, plus a year-end bonus. A portion of his year-end bonus was deemed a "deferred compensation award," which would not vest until three years after the date of issue. Various deferred compensation plans governed these awards, but each plan had a forfeiture provision that provided that if, before the end of the three-year vesting period, Morris resigned and took employment with a company that SIMNA considered to be a competitor, all deferred compensation would be forfeited.

During his employment, Morris was awarded deferred compensation bonuses for the years 1997, 1998 and 1999 that would vest in 2001, 2002, and 2003 respectively. Prior to the payments, however, Morris resigned and established a hedge fund. SIMNA notified Morris that he had forfeited his deferred compensation benefits by engaging in a business that competes with SIMNA.

Morris then commenced the present action against SIMNA arguing that he did not leave his job voluntarily; rather SIMNA had forced his departure by significantly diminishing his job responsibilities. Specifically, he alleged that SIMNA had reduced the amount of assets over which he had control from approximately $7.5 billion to $1.5 billion. Therefore, he believed he was in a "dead-end job" with no alternative but to resign. SIMNA answered and thereafter moved to dismiss the action on the pleadings for failure to state a claim asserting, among other things, that Morris's claims were barred by New York's "employee choice" doctrine.

The District Court dismissed Morris's claims on the pleadings pursuant to rule 12 (c) of the Federal Rules of Civil Procedure. Applying the "employee choice" doctrine, the court noted that the case turned on whether Morris voluntarily or involuntarily

---

**1.** Defendant Schroder Capital Management International merged into defendant Schroder Investment Management North America Inc. in or about June 1999. As a result, both defendants will be referred to collectively as "SIMNA."

left his employment. In making this determination, the District Court borrowed the constructive discharge test from federal employment discrimination law. It held that Morris's complaint could not "state a claim of constructive discharge, even taking all factual allegations as true," because his "working conditions at the time of his resignation were not so intolerable that a reasonable person would have been forced to leave the job." (2005 WL 167608, *4, 2005 US Dist LEXIS 1017, *11.) Thus, because Morris was not involuntarily discharged, SIMNA's covenant not to compete was protected by the employee choice doctrine.

Morris appealed to the Second Circuit, which stated that the "narrow question" before the court was whether "involuntary termination" in the context of New York's employee choice doctrine should be governed by the "constructive discharge" test from federal employment discrimination law (445 F3d 525, 529 [2006]). Specifically, the court certified the following questions:

> "(1) Is the factual determination of 'involuntary termination' (*i.e.*, whether an employee quit or was fired) under the New York common law employee choice doctrine governed by the 'constructive discharge' test from federal employment discrimination law?
>
> "(2) If not, what test should courts apply?" (445 F3d 525, 532 [2006].)

This Court accepted certification (6 NY3d 880 [2006]).

Upon appeal, Morris contends that the constructive discharge test should not govern the result in this case. Rather, he argues that the correct standard is whether the employer is willing to employ the employee in the same or a comparable job. Defendants, on the other hand, argue that the correct standard, as applied by the District Court, is the federal constructive discharge test.

## II.

At the outset, we note that noncompete clauses in employment contracts are not favored and will only be enforced to the extent reasonable and necessary to protect valid business interests (*see BDO Seidman v Hirshberg*, 93 NY2d 382 [1999]; *Post v Merrill Lynch, Pierce, Fenner & Smith*, 48 NY2d 84 [1979]). We have recognized an exception to the general disfavor of noncompete provisions, however, in the "employee choice" doctrine. This exception applies in cases where an employer

conditions receipt of postemployment benefits upon compliance with a restrictive covenant[2] (*Post v Merrill Lynch, Pierce, Fenner & Smith*, 48 NY2d 84 [1979]). The doctrine rests on the premise that if the employee is given the choice of preserving his rights under his contract by refraining from competition or risking forfeiture of such rights by exercising his right to compete, there is no unreasonable restraint upon an employee's liberty to earn a living (*see Kristt v Whelan*, 4 AD2d 195, 199 [1st Dept 1957], *affd without op* 5 NY2d 807 [1958]; *see also Post*, 48 NY2d at 88-89). It assumes that an employee who leaves his employer makes an informed choice between forfeiting his benefit or retaining the benefit by avoiding competitive employment (*Kristt*, 4 AD2d at 199).

An essential element to the doctrine is the employer's "continued willingness to employ" the employee (*Post*, 48 NY2d at 89). Where the employer terminates the employment relationship without cause, "his action necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer's ability to impose a forfeiture" (*id.*).

Thus, although a restrictive covenant will be enforceable without regard to reasonableness if an employee left his employer voluntarily, a court must determine whether forfeiture is "reasonable" if the employee was terminated involuntarily and without cause (*see Post v Merrill Lynch, Pierce, Fenner & Smith*, 48 NY2d 84, 89 [1979] [holding that a private pension plan provision permitting the employer to forfeit pension benefits earned by an employee who competes with an employer after being involuntarily discharged "is unreasonable as a matter of law and cannot stand"]).

In some circumstances, an employee's decision to resign from his job may not be a free and voluntary choice. Federal courts created the constructive discharge test in the context of employment discrimination cases for determining whether the employee's resignation was "voluntary." Constructive discharge occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation" (*Pena v Brattleboro Retreat*, 702 F2d 322, 325 [2d Cir 1983] [internal

---

**2.** The "employee choice" doctrine is applicable in cases involving economic relief, rather than injunctive relief.

quotation marks omitted]).[3] In order to meet this threshold, "the trier of fact must be satisfied that the . . . working conditions [were] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign" (*Pena*, 702 F2d at 325 [internal quotation marks omitted]).

Under the constructive discharge test, the actions of the employer in creating the intolerable workplace condition must be deliberate and intentional (*see Whidbee v Garzarelli Food Specialties, Inc.*, 223 F3d 62, 73 [2d Cir 2000]), and the atmosphere in the workplace must be so intolerable as to compel a reasonable person to leave (*id.*; *but see e.g. Petrosino v Bell Atl.*, 385 F3d 210, 231 [2d Cir 2004] [finding no constructive discharge where an employee's promotion opportunities were reduced, but the employee retained her job title, pay, and seniority]; *Lumpkin v H.E.L.P. USA*, 2005 WL 839669, *5, 2005 US Dist LEXIS 6227, *13-16 [ED NY 2005] [finding no constructive discharge where plaintiff retained the same salary and pay grade after his transfer to a lower position within the organization, even if the transfer was subjectively regarded as a demotion]). The constructive discharge test is not met if the employee is simply dissatisfied with a change in his job assignments (*see Stetson v NYNEX Serv. Co.*, 995 F2d 355, 360 [2d Cir 1993]; *Pena*, 702 F2d at 325-326).

We conclude that the well-established constructive discharge test is appropriate in the context of the "employee choice" doctrine. The sense and purpose of the "employee choice" doctrine is that an employee is given a choice in either preserving his rights under an employment contract by not competing or losing them by engaging in competition. In cases where an employer intentionally makes the employee's work environment so intolerable that it compels him to leave, that choice is essentially taken away from the employee. In those instances, an employer should not be permitted to enforce an unreasonable noncompete clause and simultaneously deny the employee his benefit under the guise of the employee choice doctrine (*see Post*, 48 NY2d 84 [1979]).

---

**3.** We note that federal cases have similarly employed this constructive discharge test in cases outside of the title VII employment discrimination context (*see e.g. Sure-Tan, Inc. v NLRB*, 467 US 883, 894 [1984] [recognizing application of the constructive discharge test in the labor relations arena]; *Lojek v Thomas*, 716 F2d 675, 681 [9th Cir 1983] [applying the constructive discharge standard in an Employee Retirement Income Security Act case involving the forfeiture of pension benefits]).

Accordingly, the first certified question should be answered in the affirmative and the second not answered as academic.

Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and SMITH concur; Chief Judge KAYE taking no part.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, certified question No. 1 answered in the affirmative and certified question No. 2 not answered as academic.