12-1414-cv
Scott v. Harris Interactive, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand thirteen.

PRESENT:  PIERRE N. LEVAL,
　　　　　　REENA RAGGI,
　　　　　　DEBRA ANN LIVINGSTON,
　　　　　　　　*Circuit Judges.*

-----------------------------------------------------------------------

BERKELEY S. SCOTT,

　　　　　　*Plaintiff-Counter-Defendant-Appellant,*


　　　　v.　　　　　　　　　　　　　　　　　　　　No. 12-1414-cv


HARRIS INTERACTIVE, INC.,


　　　　　　*Defendant-Counter-Plaintiff-Appellee.*

-----------------------------------------------------------------------

FOR PLAINTIFF-COUNTER-　　　　HERBERT EISENBERG (Julian R. Birnbaum,
DEFENDANT-APPELLANT:　　　　　*on the brief*), Eisenberg & Schnell LLP,
　　　　　　　　　　　　　　　　　New York, New York.


FOR DEFENDANT-COUNTER-　　　　SCOTT D. PIPER, Harris Beach PLLC,
PLAINTIFF-APPELLEE:　　　　　　Pittsford, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Henry Pitman, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 19, 2012, is AFFIRMED in part and VACATED in part, and the case REMANDED for further proceedings.

Plaintiff Berkeley S. Scott appeals from an award of summary judgment in favor of his former employer, Harris Interactive, Inc. ("Harris"), on New York labor law and breach of contract claims. See Scott v. Harris Interactive, Inc., 851 F. Supp. 2d 631 (S.D.N.Y. 2012). Insofar as Scott does not challenge the award in favor of Harris on Scott's labor law claim, we deem that point waived, and affirm that part of the judgment. See McCarthy v. S.E.C., 406 F.3d 179, 186 (2d Cir. 2005). As to his contract claim, Scott argues that the district court erred in ruling that, as a matter of law, he could not show that he was constructively terminated without cause, so as to trigger a contract right to severance benefits.[1] Scott further challenges the district court's ruling that he was contractually obligated to return a $15,000 signing bonus to Harris.

---

[1]The district court also analyzed Scott's constructive discharge claim as an "aggravated" claim of hostile work environment. Scott v. Harris Interactive, Inc., 851 F. Supp. 2d at 646. The principal cases on which the district court relied involved plaintiffs who had brought hostile environment claims together with their claims for constructive discharge. See Penn. State Police v. Suders, 542 U.S. 129, 133–34 (2004); Chenette v. Kenneth Cole Prods., Inc., 345 F. App'x 615, 619–20 (2d Cir. 2009); Ferraro v. Kellwood Co., 2004 WL 2646619, at *6 (S.D.N.Y. Nov. 18, 2004). Under such circumstances, it could indeed be said that "[t]he constructive discharge . . . at issue stem[med] from . . . sexual harassment or hostile work environment," Penn. State Police v. Suders, 542 U.S. at 146 (emphasis added). No such analysis is warranted here, however, where the claimed constructive discharge is not alleged to stem from a hostile work environment.

We review <u>de novo</u> a district court's award of summary judgment, construing the evidence in the light most favorable to the non-moving party. <u>See</u> <u>Fund for Animals v. Kempthorne</u>, 538 F.3d 124, 131 (2d Cir. 2008). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and vacate and remand in part.

The contract at issue is a May 2, 2009 employment agreement (the "Offer Letter") wherein Harris represented that Scott would hold the position of "SVP Global Accounts & Business Development" at a "starting salary [of] $220,000 per year." App. 277. The Offer Letter stated that Scott's "performance and salary [would] be reviewed annually," and that he would be "eligible to be considered for a salary increase in the Company's regular annual review cycle." <u>Id.</u> The Offer Letter specified that Scott's employment was "'at will[,'] which means that the employment relationship between [Scott] and the company may be terminated at any time, by either [Scott] or Harris Interactive, for any reason not expressly prohibited by law." <u>Id.</u> at 278. At the same time, it stated that if Scott were terminated for any reason other than "cause," Harris would provide severance benefits of six months' salary and continued health care benefits (or their cash equivalent). If, however, Scott resigned or were terminated for cause within the first year, he would have to return his $15,000 signing bonus.

It is undisputed that within the first year of Scott's employment, his job responsibilities were reduced, purportedly because of Harris's dissatisfaction with his work. Later in the first year, his salary was also reduced to $150,000 per year, although there was

3

a possibility of higher earnings through commissions. Scott refused to confirm his acceptance of these changes and, on March 16, 2010, informed Harris (through counsel) that he deemed himself constructively discharged. On March 18, 2010, Harris advised Scott's counsel that it considered Scott's March 16, 2010 communication to be notice of resignation.

Although an employer in New York is generally free to change the employment terms of an at-will employee, see Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 93 (2d Cir. 2010) ("If [plaintiff] could be dismissed at will . . . the lesser action of changing his role at the firm, subject of course to his choosing to depart at his option instead, was permissible too."), this latitude is necessarily cabined by the terms of any employment agreement. Where, as here, the Offer Letter specifies benefits payable on discharge, the employee is entitled to those benefits if the termination amounts to a constructive discharge. See Robinson v. Kingston Hosp., 55 A.D.3d 1121, 1122, 866 N.Y.S.2D 387, 388 (3d Dep't 2008) (observing that, despite plaintiff's being at-will employee, change in employment terms would entitle her to contractual severance benefits if it amounted to constructive discharge).

In rejecting Scott's claim of constructive discharge and accepting Harris's claim of resignation, the district court concluded, as a matter of law, that a salary in the reduced amount of $150,000 could not be deemed so abusive as to render continued employment untenable. See Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (recognizing constructive discharge where employer, rather than acting directly, deliberately makes

4

employee's working conditions so intolerable that a reasonable employee would be forced into involuntary resignation); accord Morris v. Schroder Capital Mgmt. Int'l, 7 N.Y.3d 616, 621–22, 825 N.Y.S.2d 697, 701 (2006). While a jury might well so conclude and, therefore, find Scott to have resigned from Harris, we do not think these conclusions can be reached as matters of law in the circumstances of this case.

Insofar as our precedent recognizes that "loss of pay or change in title," Pena v. Brattleboro Retreat, 702 F.2d at 325, may amount to constructive discharge, the question of discharge versus resignation cannot be resolved simply by concluding, as the district court did here, that the reduced amount compares favorably to the earnings of other accomplished persons in the national workforce. The percentage of a reduction and the reasonable expectations of the parties are also relevant to the factual determination whether an employee was forced into an involuntary resignation. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 161 (2d Cir. 1998) (upholding jury finding of constructive discharge where plaintiff's $60,000 salary was reduced to $26,000); see also Morris v. New York City Dep't of Sanitation, 2003 WL 1739009, at *5 (S.D.N.Y. Apr. 2, 2003) (identifying prima facie case of constructive discharge where plaintiff earning approximately $89,000 was told that salary would be reduced by $25,000 if he did not retire); Fogarty v. Near N. Ins. Brokerage Co., Inc., 1997 WL 799112, at *2 (S.D.N.Y. Dec. 30, 1997) (upholding jury verdict of constructive discharge where plaintiff lost bonus payments comprising half of expected salary).

5

Here, the evidence viewed in the light most favorable to Scott shows that his salary was reduced by $70,000, approximately one third of his original salary. That reduction, moreover, occurred despite the Offer Letter, which Scott contends reflects the parties' agreement to a $220,000 salary for at least a year. While not every breach of a salary agreement necessarily equates to constructive discharge, it is a fact that may lend support to a constructive discharge termination depending on the seriousness of the breach. The reduction in Scott's salary was also accompanied by what a factfinder could conclude were adverse changes in his title and responsibilities, again contrary to the Offer Letter. Further, evidence that Harris managers repeatedly told Scott that he had the option to resign could, when viewed in context, support a finding that the employer sought to compel Scott to take such action. See App. 176 (transcribing March 4, 2010 statement to Scott that "you [can] say, 'This is not what I agreed to. I go work somewhere else.'").

In sum, the record raises sufficient questions of fact on the disputed issue of whether Scott was constructively discharged or resigned that resolution must be left to a jury.[2] Harris's claim for repayment of the signing bonus also turns on this issue because Scott must repay it if he "voluntarily terminate[d]" his employment. App. 278.

---

[2]For purposes of summary judgment and appeal, Harris did not dispute Scott's claim that he was not discharged for cause. It is, of course, free to litigate the question of cause on remand, and we express no view as to its proper resolution.

Accordingly, the judgment of the district court in favor of Harris is AFFIRMED as to Scott's New York labor law claims and VACATED as to Scott's and Harris's contract claims, and the case REMANDED for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court