18-0002-cv
Iqbal v. Teva Pharm., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 9th day of November, two thousand eighteen.

PRESENT:
> JOHN M. WALKER, JR.,
> PIERRE N. LEVAL,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

---

MOHAMMED ZAFAR IQBAL,

> *Plaintiff-Appellant*,

> v.                                                    No. 18-0002-cv

TEVA PHARMACEUTICALS USA, INC.,

> *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:      ADAM M. PESKA, Peska & Associates, P.C., White Plains, NY.

FOR DEFENDANT-APPELLEE:      BRADLEY L. MITCHELL, Stevens & Lee, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Briccetti, *J*.), following an order granting summary judgment to the Defendant-Appellee.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Appellant Mohammed Zafar Iqbal appeals from a December 28, 2017, order of the United States District Court for the Southern District of New York granting summary judgment in favor of Defendant-Appellee Teva Pharmaceuticals, Inc. ("Teva") as to Iqbal's common-law claims for breach of an employment contract[1] and for unpaid wages pursuant to § 193(1) of the New York State Labor Law ("NYSLL"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment *de novo*, "view[ing] the evidence in the light most favorable to the party opposing summary judgment, . . . draw[ing] all reasonable inferences in favor of that party, and . . . eschew[ing] credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

Teva is a pharmaceutical company, and Iqbal had been hired by its predecessor in 1997. At the relevant times for this action, he was an "Associate Director" for "Process Engineering" for Teva. Teva terminated Iqbal's employment on February 26, 2016. Subsequent to the termination, Teva did not provide Iqbal a retroactive pay increase for the months of January and February 2016, as he claims was required by company policy. A company-wide pay increase for 2016 was announced in March, after Iqbal's employment was terminated. Nor did Teva pay Iqbal a bonus for 2015, provide severance, or immediately compensate him for unused vacation time.[2] Moreover, all of Iqbal's stock options, both vested and unvested, expired upon his termination because Teva determined that it was "for [c]ause."

Iqbal claims that Teva breached his employment agreement by not providing a retroactive pay increase, a 2015 bonus, severance, unused vacation time, and expired stock options. Iqbal also claims that Teva's failure to provide the pay increase, compensation for unused vacation time, and severance violates § 193(1) of the NYSLL and so entitles him to compensatory damages, as well as statutory damages and attorney's fees pursuant to § 198(1-a). The district court granted summary judgment as to each of these claims.

---

[1] Iqbal and Teva agree that New York law applies to the breach of contract claims.

[2] The parties agree that Teva has since fully compensated Iqbal for unused vacation time.

Iqbal does not challenge his termination or his at-will employee status at the time of that termination.

On appeal, Iqbal also has abandoned his § 198(1-a) claim and his claim for unpaid vacation time, but contends that the district court erred with respect to the remaining claims.

Iqbal and Teva's arguments on appeal do not distinguish between Iqbal's breach-of-contract and § 193(1) claims. And so, we analyze them the same. *See, e.g., Mandell v. Cty. Of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (assuming, for purposes of the opinion, that the standards applicable to two claims were "the same in all relevant respects," because the parties did not contend that they diverged).

1. Retroactive Pay Increase

Iqbal claims that the district court erred in granting summary judgment as to his claim for a retroactive pay increase for January and February 2016. In support, Iqbal cites to his own affidavit and a bank statement which, he contends, show that Teva paid him $539.71 in March 26, 2015, as a salary increase retroactive from January 1, 2015. Iqbal contends that this evinces an ongoing, annual commitment on the part of Teva to pay him retroactive salary increases for the period between January 1 and when it raises salaries annually in March. He thus seeks payment for a salary increase retroactive from January 1, 2016, until his termination date of February 26, 2016.

However, "an employer in New York is generally free to change the employment terms of an at-will employee*." Scott v. Harris Interactive, Inc.*, 512 F. App'x 25, 27 (2d Cir. 2013) (summary order) (citing *Bessemer Trust Co., N.A. v. Branin,* 618 F.3d 76, 93 (2d Cir. 2010) ("If [plaintiff] could be dismissed at will . . . the lesser action of changing his role at the firm, subject of course to his choosing to depart at his option instead, was permissible too.")). "[T]his latitude . . . is necessarily cabined by the terms of any employment agreement." *Id*.

Here, Iqbal admitted in his summary judgment response in the district court that he was an at-will employee. Given that status, he must point to employment terms that cabined Teva's discretion whether to pay him salary increases and to do so retroactively after he was terminated. He has not pointed to any such terms. As such, even accepting as true that Teva paid Iqbal a retroactive pay increase in 2015, this is insufficient to create a triable issue as to whether it was required to do so when it terminated his employment in 2016. The district court's grant of summary judgment was therefore proper as to Iqbal's claim for a retroactive pay increase for January and February 2016.

2. Stock Options

Iqbal also challenges the district court's grant of summary judgment as to his claim regarding stock options. Teva's Incentive Policy, as Iqbal agrees, provided that both vested and unvested stock options that had not yet reached their "Expiration Date" would expire if Iqbal were terminated "for [c]ause." App'x at 510, 633. The Incentive Policy defined "cause" as conduct including "any material violation of the policies of the Company . . ., including, but not limited to . . . those set forth in [Company] manuals or statements of policy . . . ." *Id*. at 294–95. Finding no genuine dispute that Teva had cause to terminate his employment, the district court thus concluded that Iqbal's claim for compensation as to the options could not proceed.[3]

The principal reason Teva terminated Iqbal for cause was that he failed to disclose in writing his substantial ownership interest in a Teva supplier, Suffern Pharmacy, as required by Teva's conflicts of interest policy. Iqbal had arranged a sizeable contract for Teva to purchase drug supplies from Suffern while Iqbal worked for Teva. After an investigation, Teva charged that Iqbal had failed to disclose this conflict of interest in writing and that he failed to obtain approval for that transaction from Teva's human resources and legal departments.

Iqbal concedes that he did not disclose his ownership interest in Suffern in writing. Moreover, he does not dispute that such violations would be "material" under the Incentive Policy's definition of cause. Rather, he contends on appeal that Teva is estopped from seeking to enforce the formal written-notice and clearance provisions because his supervisor and other Teva management employees had "actual knowledge" of—and thus acquiesced to—the conflict.

Iqbal, however, did not raise the estoppel argument in the district court. The argument is accordingly deemed waived. *See Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 114 (2d Cir. 2005) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994))). And because Iqbal's violations of the Code of Conduct and Conflicts of Interest Policy were alone sufficient to provide Teva "cause," we decline to address Iqbal and Teva's arguments with respect to Teva's other stated bases for terminating Iqbal's employment for cause. The grant of summary judgment as to Iqbal's claim for expired stock options was therefore proper.

---

[3] Iqbal does not dispute that the options at issue had not yet reached their Expiration Date.

4

### 3. Severance

Iqbal also contends that Teva was required to provide him a severance payment because, pursuant to the Severance Policy, he was not terminated "for misconduct, or violation of company policies, . . . or [the] Code of Conduct." App'x at 183. But, as the district court concluded, and as we agree, there is no genuine dispute that Teva had such a basis to terminate his employment.

Moreover, Iqbal's argument is based on his view that payment of a severance benefit was mandatory, rather than discretionary. However, the Severance Policy stated that "Teva reserves the right to determine, on a case-by-case basis, whether an individual employee is eligible for severance pay . . . ." *Id*. Termination for improper conduct was then listed merely as one of the bases for why severance payments categorically would not be provided. *Id*. As such, even if Teva did not have cause to terminate Iqbal, he has pointed to no contractual provision that cabined its discretion not to pay him severance. The district court was therefore correct to grant summary judgment as to this claim.

### 4. 2015 Bonus

Iqbal also contends that the district court's grant of summary judgment as to his claim for payment of a 2015 annual bonus was improper. Iqbal argues that he was guaranteed a bonus and that Teva was required to provide it even though his employment was terminated prior to Teva paying out 2015 annual bonuses in 2016. In support, Iqbal points to an offer letter, which he signed, providing him "[c]ontinued eligibility to participate in" Teva's bonus program, "with an incentive opportunity equal to 20% of your Annual Base Salary; subject to the terms and conditions" of the Bonus Program. App'x at 320. The offer letter further stated that "Teva reserves the right to change, end, or alter plans and eligibility dates at any time." *Id*.

Iqbal and Teva agree that Teva's Employee Incentive Compensation Policy provided additional terms. These included that Teva "reserve[d] the right to modify or terminate [incentive] plans at any time at its discretion. To be eligible to receive an annual award an employee must be an active employee . . . on the date that bonuses are paid, with limited exceptions. . . . Eligibility to participate in the plan does not guarantee an [sic] bonus award." *Id*. at 706.

Iqbal contends that an annual bonus of 20% was not discretionary, but rather "an integral," guaranteed term in the offer letter. And so, he argues that Teva was required to pay him a bonus for 2015, despite the policy stating that Iqbal needed to be an active employee on the date bonuses were awarded.

Under New York law, "[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan." *Weiner v. Diebold Grp., Inc.*, 568 N.Y.S.2d 959, 960

5

(1st Dep't 1991). And so, a "'bonus' payable at the discretion of the employer" is "subject to forfeiture" if the bonus plan so provides. *Id*. By contrast, a guaranteed commission that an employee has already "earned" is not subject to forfeiture upon termination, even if the plan provides otherwise. *Id*.

Here, there is no genuine dispute that Iqbal's bonus was discretionary and so was not required upon termination. With respect to bonuses, the offer letter stated merely that Iqbal had "eligibility" for an "opportunity" to earn a 20% bonus but that this was subject to bonus plan terms and conditions. App'x at 124. And as to those terms, Iqbal contends that the language providing that Teva "reserves the right to modify or terminate [bonus] plans at any time at it discretion" meant that Teva had discretion only to change or end entire plans rather than to decide not to award a bonus to a particular individual. But this ignores Policy language to the contrary just two sentences later: There, Teva stated that, regardless of the nature of a bonus plan, "[e]ligibility to participate in the plan does not guarantee an [sic] bonus award." App'x at 706. Teva thus plainly retained discretion whether to award individuals a bonus.

Iqbal also points to a screenshot from Teva's G-Top[4] personnel system which, he contends, shows a 2015 "target bonus" for Iqbal of $31,000. Iqbal argues that this shows that Teva had already approved the bonus and, thus, it was no longer discretionary. But Iqbal adduces no evidence that Teva ever made any representations to Iqbal that it would actually pay him this bonus. *Cf. Mirchel v. RMJ Sec. Corp.*, 613 N.Y.S.2d 876, 878–79 (1st Dep't 1994) (finding that employer's course of conduct, including year-end letter informing plaintiff that he would be awarded a $25,000 bonus and policy allowing employees to take advances against bonuses, "implied [a] promise that . . . bonus payments constitute[d] a part of plaintiff's compensation"); *Carlson v. Katonah Capital, L.L.C.*, 814 N.Y.S.2d 889, 2006 WL 273548, at *3 (N.Y. Sup. Ct. 2006) (finding that otherwise-discretionary compensation became guaranteed when employer sent award letters specifying specific amounts that employees would be paid). We agree with the district court that such a discretionary bonus is not transformed into an unforfeitable guarantee merely on the basis of evidence that an employer engaged in preliminary bonus calculations.

The decisions Iqbal cites in support of such a bonus are also unavailing. In addition to *Mirchel*, 613 N.Y.S.2d at 878–79, and *Carlson*, 2006 WL 273548 at *3, he cites to *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985), which stated that an employer cannot "terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed," *id*. at 112–13. This comparison fails for two reasons. For one, Iqbal has not adduced evidence that this purpose motivated Teva's termination decision.

---

[4] Neither party, nor the record, makes clear what "G-Top" stands for. However, Iqbal stated in an affidavit that this is "an employee intranet system to access personnel files, including pay increases and bonuses."

What is more, any bonus, as we have seen, was not "owed" but rather discretionary. And so, *Wakefield* is inapposite.[5]

The district court therefore properly granted summary judgment as to each of Iqbal's claims. We have considered Iqbal's remaining arguments and conclude they are without merit. Accordingly, the order of the district court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Teva contends that the New York Court of Appeals held in *Gallagher v. Lambert*, 549 N.E.2d 136 (N.Y. 1989), that *Wakefield* incorrectly stated the aspects of New York law upon which Iqbal relies. We need not address this argument, however, because *Wakefield* does not support Iqbal's argument.