23-174-cv
Kemp v. Regeneron Pharm., Inc.

# United States Court of Appeals
## for the Second Circuit

August Term, 2023

(Argued: January 25, 2024          Decided: September 9, 2024)

Docket No. 23-174-cv

_____

DENISE KEMP,

*Plaintiff-Appellant*,

v.

REGENERON PHARMACEUTICALS, INC.,

*Defendant-Appellee*.

_____

Before:

LOHIER, LEE, and PÉREZ, *Circuit Judges*.

Plaintiff Denise Kemp, a manager at Renegeron Pharmaceuticals, Inc., spent the better part of June 2016 working remotely to take care of a child with a serious medical condition. Regeneron then prohibited her from working remotely for more than one day per week and required her to use intermittent leave under the Family and Medical Leave Act (FMLA) for any additional time away from the office. Kemp sued Regeneron, alleging interference with her rights under the FMLA, as well as discrimination, retaliation, and constructive discharge in violation of the New York State Human Rights Law (NYSHRL). Believing that the denial of FMLA benefits is an element of an unlawful interference claim, the United States District Court for the Southern District of New York (Román, *J.*) held that Kemp's FMLA claim failed because Regeneron

had not denied Kemp's use of FMLA benefits.  It determined that the claim was time-barred in any event.  The District Court also held that Kemp's NYSHRL claims failed on the merits.  We hold that an employer can violate the FMLA merely by interfering with an employee's use of FMLA benefits, even if the employer ultimately grants the benefits to which the employee is entitled.  Because Kemp's FMLA claim and NYSHRL claims for discrimination and retaliation were time-barred and her NYSHRL claim for constructive discharge fails on the merits, however, we **AFFIRM**.

STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY, *for Appellant*.

SHAWN MATTHEW CLARK, (Craig R. Benson, *on the brief*), Littler Mendelson, P.C., New York, NY, *for Appellee*.

Seema Nanda, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Rachel Goldberg, Counsel for Appellate Litigation, Shelley E. Trautman, Attorney, U.S. Department of Labor, Washington, DC, *for Amicus Curiae U.S. Department of Labor*.

LOHIER, *Circuit Judge*:

The Family and Medical Leave Act (FMLA) entitles eligible employees to take a total of 12 workweeks of leave from work during a one-year period to care for a sick child, for example, 29 U.S.C. § 2612(a)(1), and makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights under the statute, *id.* § 2615(a)(1).  The principal question raised here is whether an employer who discourages but does not deny an employee's request for FMLA leave "interfere[s] with" the employee's rights

2

in violation of the statute. The answer is yes. We nevertheless affirm the District Court's dismissal of Plaintiff Denise Kemp's FMLA claim as time-barred because her employer, Regeneron Pharmaceuticals, Inc., did not willfully violate the statute so as to extend the two-year statute of limitations. We separately affirm the dismissal of Kemp's parallel state law claims under the New York State Human Rights Law (NYSHRL).

## BACKGROUND

Starting as an auditor in 2008, Kemp was employed by Regeneron for nearly a decade until she retired on January 6, 2017. During her tenure, she was promoted three times, in 2012, 2014, and 2016, with the latter two promotions recommended by Teresa Rivenburgh, Kemp's direct supervisor at all relevant times. By 2016 Kemp had doubled her salary and risen to become a Senior Manager in the Quality Assurance Department, supervising several employees.

Things changed in June 2016, when Kemp opted to work remotely in order to care for a disabled daughter who was hospitalized with several serious medical conditions. This was not the first time Kemp had been away from the office for an extended period. She had previously taken leave for a number of days in 2015 to care for her daughter, and from April 4 through May 15, 2016 she

3

took a short-term leave under the FMLA to have surgery. In both cases, Regeneron approved the leave.

In June 2016 Kemp's daughter underwent surgery, prompting Kemp to work remotely from a hospital for 15 days while her daughter recovered. After Kemp returned to the office, Rivenburgh and Rivenburgh's supervisor, Patrice Gilooly, voiced their concerns about the amount of time Kemp had been away. "Rivenburgh told Kemp that [she] needed to be more visible in the office and attend[] meetings in-person rather than by phone." Joint App'x 444. Rivenburgh, with Gilooly's blessing, then limited Kemp to one day of remote work per week, even though auditors in Kemp's department regularly worked from home and some non-managers worked remotely full-time. At about the same time, however, Rivenburgh also encouraged Kemp to speak with someone in Regeneron's Human Resources Department about using paid time off or intermittent FMLA leave rather than remote work for any additional days Kemp spent away from the office.

On July 13, 2006, Kemp applied for intermittent FMLA leave to continue to care for her daughter. Regeneron approved the leave, which was set to run from August 9, 2016 through February 8, 2017. Around the same time, Kemp and

4

Rivenburgh began discussing Kemp's possible transition to a role with a similar status and title (senior manager) as her current position, but with fewer managerial responsibilities. The parties dispute how these discussions began. Kemp contends that Rivenburgh told her to consider a less demanding position, while Gilooly and Rivenburgh testified that, to the contrary, Kemp "approached [them] about wanting a change in her job." Joint App'x 165.

Regeneron eventually developed a new senior manager position for Kemp and, in October 2016, posted a job opening for the position that Kemp was set to leave. At that point, Kemp did not consider the posting to be inappropriate because she had agreed to move to the new position that had been developed for her. Kemp formally accepted the new senior manager position in November 2016, with an expected start date in early 2017.

On December 19, 2016, however, less than a month after accepting the new position, Kemp abruptly notified Regeneron that she planned to retire effective January 6, 2017. According to Kemp, her decision to retire was spurred by Regeneron's refusal to let her work remotely, along with her belief that it was "better to leave as a retirement, leave on good terms[,] than it [was] to quit" because "[t]he pharmaceutical industry is a very small industry, and should [she]

5

apply for a position elsewhere [she] didn't want to be blackballed."  Joint App'x 254–55.  A Regeneron executive emailed Kemp to ask if there was anything he could do to keep her at the company.  On January 5, 2017, the day before Kemp was scheduled to retire, the same executive offered to transfer her to a different position.  In keeping with her announcement the month before, however, Kemp retired on January 6, 2017.  A few months later, Kemp spoke with Regeneron executives and employees about performing consulting work for the company; the discussions went nowhere.

Kemp filed this action in New York state court on November 7, 2019, claiming that Regeneron had violated her rights under both the FMLA and the NYSHRL.  Specifically, Kemp alleged that Regeneron had interfered with her rights under the FMLA by prohibiting her from working remotely more than one day per week.  Kemp also claimed that Regeneron had violated the NYSHRL by discriminating against her based on her association with a person with a disability (her daughter), retaliating against her for engaging in protected activity, and constructively discharging her.

Regeneron removed the case to federal court.  Following discovery, Regeneron moved for summary judgment, which the United States District

Court for the Southern District of New York (Román, *J.*) granted.[1]  Because

Regeneron never denied Kemp's request for FMLA leave but merely discouraged

her from taking it, the District Court explained, Kemp failed to prove that

Regeneron had violated her rights under the FMLA.  The District Court also held

that Kemp's FMLA claim was time-barred because she failed to show that

Regeneron had acted willfully so as to extend the statute's limitations period

from two years to three.  Finally, the District Court concluded that Kemp also

failed to adduce evidence in support of her state claims under the NYSHRL.

Kemp challenges these conclusions on appeal.  Although we do not agree

entirely with the District Court's reasoning, we **AFFIRM**.

## DISCUSSION

We review the District Court's grant of summary judgment *de novo*,

construing the evidence in Kemp's favor.  *See Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 546 (2d Cir. 2010).  A district court must "grant summary judgment if the

---

[1] We have jurisdiction over Kemp's appeal even though the District Court never entered judgment in a separate document as required by Federal Rule of Civil Procedure 58. Federal Rule of Appellate Procedure 4(a)(7)(B) provides that "[a] failure to set forth a judgment or order on a separate document when required by [Rule] 58(a) does not affect the validity of an appeal from that judgment or order" in a civil case.  Fed. R. App. P. 4(a)(7)(B).  In any event, under Rule 58 the judgment became final 150 days after the District Court's order was entered on the docket.  *See* Fed. R. Civ. P. 58(c)(2)(B).

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, "speculation by the party resisting the motion will not defeat summary judgment." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 621 (2d Cir. 2016) (quotation marks omitted).

## I

Although she acknowledges that Regeneron never denied her formal request for FMLA leave to care for her daughter, Kemp argues that Regeneron's attempts to discourage her from taking FMLA leave and the limitations the company placed on her remote work unlawfully interfered with the exercise of her rights under the FMLA. *See* 29 U.S.C. § 2615(a)(1).

We hold that an employer can violate the FMLA merely by interfering with the employee's benefits under the FMLA without actually denying the employee's request for those benefits. We thus agree with the United States Department of Labor as amicus curiae in this case that "an employee is not required to demonstrate an actual denial of benefits to establish a violation of section 2615(a)(1) and that interference or restraint alone, which includes discouragement, is enough to establish such a violation." United States Amicus

Br. 20.  This holding reflects the statute's plain, unambiguous text, according to which it is unlawful for an employer to "*interfere* with, restrain, *or* deny" FMLA rights.  29 U.S.C. § 2615(a)(1) (emphases added).

The District Court erred to the extent it required Kemp to demonstrate that Regeneron denied her requests for FMLA leave in order to prove her FMLA claim.  We very much appreciate that in reaching its decision, the District Court relied on language in *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016), in which we said that "to prevail on a claim of interference with her FMLA rights, a plaintiff must establish," among other things, "that she was denied benefits to which she was entitled."  *Id.* at 424.  But elsewhere in *Graziadio*, we stated the full legal standard, which is that "[t]o succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied *or otherwise interfered with* a benefit to which she was entitled under the FMLA."  *Id.* (emphasis added); *see also id.* (relying in part on this Court's precedent "describing FMLA interference claims as 'questioning whether the employer in some manner *impeded* the employee's exercise of his or her right'" (emphasis added) (cleaned up)).  The plaintiff's only claim in *Graziadio* was that her employer had *denied* her eligible request for FMLA leave.  *Id.* at 424–25.  Because

9

the denial of benefits was the sole issue in the case, we had no occasion to address a claim of unlawful interference with an employee's use of FMLA benefits. *Graziadio* therefore does not control where, as here, the plaintiff claims that her employer interfered with but ultimately did not deny her use of FMLA benefits.

We nevertheless affirm the District Court's grant of summary judgment because Kemp failed to adduce any admissible evidence that Regeneron acted willfully when it interfered with her use of FMLA benefits. Kemp concedes that her FMLA claims are timely only if they arise from *willful* FMLA violations. *See* 29 U.S.C. § 2617(c). An employer acts willfully under the FMLA when it knows "or show[s] reckless disregard for the matter of whether its conduct was prohibited by the" FMLA. *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Kemp contends that a jury could reasonably find that Regeneron recklessly disregarded its obligations under the FMLA when it intentionally limited her remote work so that she would need to ration her FMLA leave. We see no support in the record for the argument that Regeneron acted in disregard of its

10

obligations under the FMLA. To the contrary, Regeneron appears on this record to have tried to comply with rather than flout its obligations under the FMLA.

Kemp's other arguments in favor of reversing the District Court's dismissal of her FMLA claim fare no better. First, she maintains that Regeneron intended to discourage her from caring for her sick daughter by limiting her ability to work remotely and threatening to fire her if she took FMLA leave. But in support of this claim, Kemp cites no admissible evidence of Regeneron's intent (her own subjective speculation and views about Regeneron's intent are not admissible). Second, Kemp contends that Regeneron substantially limited her remote work days and punished her for working remotely. But this argument misunderstands the nature of the benefits conferred by the FMLA. The FMLA protects Kemp's right to take paid (and thereafter uncompensated) *leave* for specified reasons and for a specified number of weeks during a 12-month period. It does not entitle employees to work remotely or make it unlawful for an employer to punish an employee who works remotely. Remote work may be another form of accommodation, but it is not "leave" within the meaning of the statute. Because, on this record, Kemp failed to adduce evidence that Regeneron willfully interfered with her use of FMLA benefits, rather than her ability to

11

work remotely, we affirm the District Court's grant of summary judgment dismissing Kemp's FMLA claim.

## II

Kemp also asserts three claims under the NYSHRL — associational discrimination (based on her association with her disabled daughter), retaliation, and constructive discharge. In granting summary judgment for Regeneron on the first two claims (discrimination and retaliation), the District Court concluded that Kemp failed to adduce evidence that she suffered an adverse employment action.

Urging a contrary conclusion on appeal, Kemp argues that Regeneron's decision to curtail her ability to work remotely to no more than one day per week, as well as her job reassignment, which would have stripped her of direct reports, each constituted an adverse employment action under the NYSHRL.

We need not resolve this issue on appeal. Even assuming that Kemp raised a genuine factual dispute that either of these employment actions qualified as adverse, we conclude that her claims for discrimination and retaliation, which are subject to a three-year statute of limitations, were untimely. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023) ("Under the

12

NYSHRL, claims must be filed within three years of the adverse employment action.").

As Kemp acknowledges, the statute of limitations under the NYSHRL begins to run when an "employee receives a definite notice" that the employer will undertake an adverse action. *Smith v. United Parcel Serv. of Am., Inc.*, 65 F.3d 266, 268 (2d Cir. 1995) (quotation marks omitted). That date may precede the "designated date on which employment terminated." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 305 (2d Cir. 2017) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). Here, that is the date on which Regeneron "established [its] official position — and made that position apparent to [Kemp]." *Economu v. Borg-Warner Corp.*, 829 F.2d 311, 315 (2d Cir. 1987) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 262 (1980)).

Because Kemp filed her lawsuit on November 7, 2019, her discrimination and retaliation claims under the NYSHRL are time-barred unless the relevant date on which Regeneron made its official position apparent to Kemp was on or after November 7, 2016. For the reasons described below, we conclude that these claims are time-barred.

There is no dispute that Kemp was informed as early as July 2016 that she could work remotely only one day a week. Kemp's NYSHRL claim arising from that employment action thus accrued in July 2016, and she was therefore required to file that claim by July 2019, not November 2019.

Kemp was similarly informed in July 2016 that she "should look for another position" because she "would be better suited for a position that did not have as many responsibilities." Joint App'x 451. By this point, then, Kemp was aware that any new position she obtained would have fewer responsibilities. On summary judgment, furthermore, Kemp conceded that she had accepted her new position by October 2016, when Regeneron posted a job opening seeking to fill the position she was leaving. Regeneron's Rule 56.1 Statement asserts that "Kemp did not consider the posting of her job to be inappropriate. She *knew* she was moving to the new position in Hutchinson's department." Joint App'x 454 (emphasis added). Because Kemp did "not dispute th[at] fact[]," Joint App'x 454, it is deemed admitted for summary judgment purposes, *see* Local Rule 56.1(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). We accordingly conclude that Regeneron "established its official position — and made that

14

position apparent to [Kemp]" by October, not November, 2016.  *Economu*, 829 F.2d at 316 (quotation marks omitted).

On appeal, Kemp suggests that her claim accrued well after October 2016 because the precise details of her transfer had yet to be finalized.  We disagree, and find *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20 (2d Cir. 1985), instructive on this point.  There we concluded that the plaintiff received definite notice of employment termination when he was orally informed "that he would, absent exceptional circumstances, be removed from the payroll," even though the personnel department had not yet officially approved the decision. *Id.* at 24.  The "mere possibility that the decision [to terminate employment] might be reversed," we said, is "not enough to label it advisory or ineffective for time-bar purposes."  *Id.*  So too here.

Kemp otherwise seeks to toll the statute of limitations by relying on New York's continuing wrong doctrine.  But that "doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.  The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs."  *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (quotation marks omitted).  In other words, Kemp cannot

rely on the continuing wrong doctrine simply by claiming that she continued to feel the effects of Regeneron's allegedly discriminatory act after October 2016. *See id.*; *cf. Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907–08 (2d Cir. 1997). We think that Kemp's reliance on the doctrine is also misplaced because we see no evidence of a discrete discriminatory act or "wrong" that would give rise to a new claim of an unlawful employment practice after the initial claim. *See Henry*, 48 N.Y.S.3d at 70.

Finally, we turn to the District Court's grant of summary judgment to Regeneron on Kemp's constructive discharge claim. Under New York law, "[c]onstructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroeder Capital Mgmt. Int'l*, 7 N.Y.3d 616, 621 (2006) (quotation marks omitted); *see Mascola v. City Univ. of N.Y.*, 787 N.Y.S.2d 655, 656 (1st Dep't 2005). Stated otherwise, the employee must face working conditions that are "so difficult or unpleasant that a reasonable person in the employee's shoes would [feel] compelled to resign."

*Morris*, 7 N.Y.3d at 622 (quotation marks omitted). The employer, moreover, "must be deliberate and intentional" in creating such conditions. *Id.*

On this record, we agree with the District Court that Kemp failed to show that her working conditions were so difficult that a reasonable person would have been compelled to resign. Although Kemp points to her reassignment to a position with fewer direct reports as evidence that she satisfied this demanding standard, a reasonable person would not consider her transfer to be so intolerable as to compel resignation. We note, for example, that Kemp "retained the same salary and pay grade after [her] transfer." *Id.*; *see Petrosino v. Bell Atl.*, 385 F.3d 210, 231 (2d Cir. 2004) (a reduction in some responsibilities would not "support [an employee's] constructive discharge claim"); *Gaffney v. City of New York*, 955 N.Y.S.2d 318, 319 (1st Dep't 2012). "The constructive discharge test is not met if the employee is simply dissatisfied with a change in [their] job assignments." *Morris*, 7 N.Y.3d at 622.

For these reasons we affirm the District Court's judgment insofar as it granted summary judgment in favor of Regeneron and dismissed Kemp's NYSHRL claims.

## CONCLUSION

We have considered Kemp's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.