■ LAWLEY SERVICE, INC., Appellant, v PROGRESSIVE WEATHERPROOFING, INC., Respondent. [816 NYS2d 787]—

Appeal from an order of the Supreme Court, Erie County (Joseph G. Makowski, J.), entered June 30, 2005. The order denied plaintiff's motion for summary judgment dismissing the counterclaim.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Plaintiff, an insurance agency, commenced this action seeking premiums allegedly due for insurance and defendant, a corporation specializing in building restoration, asserted a counterclaim for tortious interference with contract. Supreme Court properly denied plaintiff's motion for summary judgment dismissing the counterclaim. Defendant had obtained its insurance through plaintiff for a period of approximately 16 years, but in 2002 defendant obtained its insurance through a

different insurance agency. That agency had obtained a quote from an insurer that was considerably less than the quote from plaintiff for the same policy. The insurer issued a policy for defendant but, after a loss control inspection, the insurer cancelled the policy effective three months from the date of its issuance.

We reject plaintiff's contention that the court erred in refusing to dismiss the counterclaim on the ground that there was no valid contract of insurance between defendant and its insurer and thus that there is no basis for a counterclaim against plaintiff for interference with contract. The record establishes that defendant's insurer did not rescind the policy based upon any alleged material misrepresentations (*see generally Zilkha v Mutual Life Ins. Co. of N.Y.*, 287 AD2d 713 [2001]) but, rather, the insurer cancelled the policy after conducting a loss control inspection (*see Portofino Ristorante & Catering v Michigan Millers Mut. Ins. Co.*, 198 AD2d 869 [1993], *lv denied* 83 NY2d 753 [1994]). Thus, contrary to plaintiff's contention, it cannot be said as a matter of law that there was no valid contract between defendant and its insurer. Contrary to plaintiff's further contention, the record establishes that there is a triable issue of fact with respect to plaintiff's alleged tortious interference with the contract, resulting in the insurer's breach thereof (*see generally NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]). There is evidence in the record that, after the insurer issued the policy to defendant, plaintiff's agent discussed defendant's account with an underwriter for defendant's insurer. That underwriter in turn expressed his concerns with the account to the underwriter who approved the policy. Thereafter, the insurer conducted a loss control inspection and cancelled the policy. Based on that evidence, a trier of fact could reasonably infer that a loss control inspection would not have been conducted, nor would the policy have been cancelled, had plaintiff's agent not discussed defendant's contract with an underwriter for defendant's insurer (*see generally Krampen v Foster*, 242 AD2d 913, 914-915 [1997]).

All concur except Pigott, Jr., P.J., and Kehoe, J., who dissent and vote to reverse in accordance with the following memorandum.

Pigott, Jr., P.J., and Kehoe, J. (dissenting). We respectfully dissent because we cannot agree with the majority that there is a triable issue of fact with respect to plaintiff's alleged tortious interference with contract. We therefore would reverse and grant plaintiff's motion for summary judgment dismissing the counterclaim.

The elements of tortious interference with contract are, inter

alia, the existence of a valid contract between defendant and a third party, plaintiff's intentional and unjustified procurement of the third party's breach of the contract, and the actual breach of the contract (see *Jim Ball Chrysler LLC v Marong Chrysler-Plymouth, Inc.*, 19 AD3d 1094 [2005], *lv denied* 5 NY3d 709 [2005]). Here, we agree with the majority that there was a valid insurance contract between defendant and its insurer and that plaintiff knew of the existence of the contract. We do not agree with the majority, however, that "there is a triable issue of fact with respect to plaintiff's alleged tortious interference with the contract, resulting in the insurer's breach" of that contract. Indeed, we conclude that there was no breach of the contract. The record establishes that the insurer had a 60-day window in which it was entitled to cancel the policy after conducting a loss control inspection. The record further establishes that, within that 60-day period, the insurer conducted an investigation of defendant's business and cancelled the policy on the ground that defendant's business did not fit within the insurer's underwriting guidelines and thus that the policy of insurance would not have been issued in the first instance. Even assuming, arguendo, that plaintiff's agent discussed defendant's contract with an underwriter for defendant's insurer prior to the investigation, we conclude that there was no breach of contract inasmuch as the insurer conducted the investigation and cancelled the policy based upon its right to do so (see *Jack L. Inselman & Co. v FNB Fin. Co.*, 41 NY2d 1078, 1080 [1977]; *Foster Wheeler Broome County v County of Broome*, 275 AD2d 592, 595-596 [2000], *lv denied* 95 NY2d 769 [2000]; *Portofino Ristorante & Catering v Michigan Millers Mut. Ins. Co.*, 198 AD2d 869, 870 [1993], *lv denied* 83 NY2d 753 [1994]; *see generally NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 620-621 [1996]). Because there was no breach, it necessarily follows that plaintiff cannot be said to have intentionally procured a breach (see *Jack L. Inselman & Co.*, 41 NY2d at 1080; *Foster Wheeler Broome County*, 275 AD2d at 595-596). Present—Pigott, Jr., P.J., Scudder, Kehoe, Green and Hayes, JJ.