Lahtinen, J.
*1525 Plaintiffs commenced this action seeking a declaratory judgment regarding their noncompetition agreements, and Jacob further claimed gender discrimination by NYOH. Various affirmative defenses were set forth by NYOH and AOR, with NYOH also asserting numerous counterclaims against plaintiffs and
*1526 UHO. Eventually, NYOH moved for, among other things, summary judgment declaring that the noncompetition agreements signed by plaintiffs were enforceable as well as for injunctive and monetary relief based on breaches of those agreements. AOR moved for summary judgment dismissing the cause of action asserted by Goodman alleging, among other things, illegal fee splitting involving AOR and others as a ground to find the 1996 noncompetition agreement unenforceable. Relief sought in plaintiffs’ motion for summary judgment included, among other things, a judgment declaring that the noncompetition agreements were unenforceable. In a thorough decision, Supreme Court denied NYOH’s motion in its entirety, granted plaintiffs’ motion only to the extent of declaring that Goodman’s September 1996 noncompetition agreement was unenforceable, and noted that AOR’s motion was moot. These cross appeals by NYOH and plaintiffs ensued.
Agreements restricting an individual’s right to work or compete are not favored and thus are strictly construed (see Morris v Schroder Capital Mgt. Intl., 7 NY3d 616, 620 [2006]; BDO Seidman v Hirshberg, 93 NY2d 382, 389 [1999]). Although the potential negative impact on patients of noncompetition agreements involving physicians has resulted in several states invalidating all such agreements (see Paula Berg, Judicial Enforcement of Covenants Not To Compete Between Physicians: Protecting Doctors’ Interests at Patients’ Expense, 45 Rutgers L Rev 1, 11 [1992]; see also S. Elizabeth Wilborn Malloy, Physician Restrictive Covenants: The Neglect of Incumbent Patient Interests, 41 Wake Forest L Rev 189, 192 n 15 [2006]), New York allows such agreements (see Karpinski v Ingrasci, 28 NY2d 45, 49 [1971]). However, the agreement must be reasonable, and it “is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public” (BDO Seidman v Hirshberg, 93 NY2d at 388-389). Violating “any prong renders the covenant invalid” (id. at 389). Further, “the application of the test of reasonableness of employee restrictive covenants focuses on the particular facts and circumstances giving context to the agreement” (id. at 390).
With these principles in mind, we turn to the noncompetition agreements in dispute. Jacob, who attended medical school in Syria, was recruited to come to NENY in Schenectady County from her position in New York City and she joined a long established medical practice. Her September 1999 employment agreement contained a covenant not to compete for one year in *1527 the counties of Albany, Fulton, Montgomery, Saratoga or Schenectady unless she was terminated without cause. It also provided a $100,000 payment to buy out the restrictive covenant. Since the time and region restrictions are reasonable in light of Jacob’s circumstances as a new physician recruited to come to the area, the dispute with regard to her turns on whether she was terminated without cause. If so, the restrictive covenant is inapplicable. Both Jacob and NYOH sought summary judgment on this issue. Supreme Court denied both parties such relief as it found factual issues. Upon review of the record, we agree with Supreme Court that there are triable issues regarding the manner in which Jacob’s relationship with NYOH ended. The wording of the letters exchanged between the parties from January 2007 until Jacob’s position with NYOH ended does not establish as a matter of law whether Jacob terminated the relationship or whether she was effectively fired without cause by NYOH. The other evidence on this issue, viewed in the light most favorable to each party’s position as nonmovant for purposes of this motion (see Alexander v St. Mary’s Inst., 78 AD3d 1475, 1476 [2010]), is not dispositive.
Supreme Court granted Goodman’s motion to the extent of finding that the noncompetition clause he signed in September 1996 was no longer enforceable. Supreme Court relied primarily upon a master agreement that Goodman and others signed in 2000 when NENY and NYOH were negotiating the merger, and which explicitly terminated all existing noncompetition agreements. While the copy of the master agreement in the record was not signed by, among others, PRN or NYOH, Goodman stated in an affidavit that the master agreement was prepared by USO’s attorneys and constituted an agreement among all relevant parties including Goodman, AOR, PRN, NYOH and NENY. NYOH does not point to evidence directly contesting Goodman, but it relies upon the testimony of NYOH’s president that he had not seen the master agreement. Although Supreme Court held that the termination clause in the master agreement was sufficient for summary judgment in Goodman’s favor, we find that there are triable issues given the fact that the agreement in the record was not signed by all parties and the evidence does not clearly establish that a binding agreement was intended by all parties. Nevertheless, we affirm Supreme Court since the circumstances of this case establish that the 1996 noncompetition clause was not reasonable.
Goodman’s situation and the covenant he signed were significantly different from Jacob’s. He had practiced with Reilly since 1980 at NENY in Schenectady County. His initial agree *1528 ment with Reilly did not have a covenant not to compete. When the nonphysician company PRN became involved with NENY in 1996, Goodman signed a noncompetition agreement. That agreement was broader and more onerous than Jacob’s. It sought to preclude Goodman from practicing within 10 miles of any facility managed by PRN in New York, and it is not clear how many facilities or what geographical area this would necessarily encompass. The restriction was for two years and provided that a breach would give rise to damages in an amount equal to all payments to Goodman in the previous two years, which here exceeds $1,200,000. The noncompetition agreements used by NYOH were considerably less onerous than the one Goodman signed in 1996 with PRN, and no legitimate reason is articulated of a need for expansive protection with respect to Goodman. At the time of the merger, Jacob signed a consent to assign her employment agreement with NENY to NYOH, whereas Goodman did not sign such a consent nor did he sign a new agreement with NYOH. Under all the facts and circumstances of this case, it is unreasonable as a matter of law for NYOH to be permitted to enforce the 1996 restrictive covenant as to Goodman.
Plaintiffs argue that Supreme Court should have granted their motion for summary judgment dismissing NYOH’s counterclaims for breach of contractual or common-law duties of loyalty and conversion of property. “[W]hile an employee may secretly incorporate a competing business prior to departing, the employee may not use his or her principal’s time, facilities or proprietary secrets to build the competing business” (Chem-fab Corp. v Integrated Liner Tech., 263 AD2d 788, 790 [1999]). Plaintiffs met their initial burden with affidavits and testimony stating that they maintained normal office hours, did not solicit NYOH staff, did not plan for the new practice during office hours at NYOH and took only records authorized by patients. NYOH, however, submitted evidence indicating, among other things, that meetings may have taken place during office hours and NYOH staff may have been solicited during such time for positions at UHO. The conflicting proof raises triable issues.
Next, we consider NYOH’s contention that Jacob’s gender discrimination claim should have been dismissed. Jacob asserted two instances of discrimination. First, that her 2003 bonus was significantly less than those received by male physicians and, second, that male physicians who had not signed NYOH’s agreement were not presented, as she was, with an ultimatum to sign within two days or be terminated. Although a three-year statute of limitations governs an action alleging discriminatory prac *1529 tices (see Koerner v State of N.Y., Pilgrim Psychiatric Ctr., 62 NY2d 442, 445-446 [1984]), there is evidence indicating that Jacob’s bonus for 2003 was not finally determined until April 2004 and, thus, her claim asserted in March 2007 was not necessarily untimely. As for the alleged disparate treatment of Jacob and male physicians regarding signing the employment agreement, the proof reveals factual issues precluding summary dismissal.
The remaining issues, to the extent not rendered academic, have been considered and found unpersuasive.
Peters, P.J., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the order is affirmed, without costs.