■ MARSHALL & STERLING, INC., Respondent, v DANIEL SOUTHARD, Appellant, et al., Defendant. [50 NYS3d 420]—

In an action, inter alia, to recover damages for breach of contract, the defendant Daniel Southard appeals (1) from a decision of the Supreme Court, Dutchess County (Forman, J.), dated March 18, 2014, made after a nonjury trial, and (2), as limited by his brief, from so much of an order of the same court

dated January 14, 2015, as denied that branch of his motion which was pursuant to CPLR 4404 (b) to set aside the decision.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (*see Schicchi v J.A. Green Constr. Corp.*, 100 AD2d 509 [1984]); and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the defendant Daniel Southard which was pursuant to CPLR 4404 (b) to set aside so much of the decision as determined that the plaintiff was entitled to an award of damages; as so modified, the order is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Dutchess County, for further proceedings consistent herewith; and it is further,

Ordered that one bill of costs is awarded to the defendant Daniel Southard.

In 2006, the defendant Daniel Southard left his job as an insurance agent at the Fitzharris Insurance Agency and began employment at the plaintiff, Marshall & Sterling, Inc. (hereinafter M&S). At that time, Southard and M&S entered into an employment agreement. Article V, Section 4, of the employment agreement, entitled "Post-Termination Commission Sharing by Employee," provided that Southard would pay M&S an amount "equal to 50% of annualized gross commissions for the first 36 months" for any client that followed him from M&S within 24 months of the termination of his employment.

In January 2010, Southard left M&S to begin employment at the defendant Ulster Insurance Services, Inc. (hereinafter Ulster). A number of clients followed Southard to Ulster, including clients that had followed him to M&S from Fitzharris (hereinafter the Fitzharris clients) and clients that Southard had originated at M&S (hereinafter the non-Fitzharris clients). M&S demanded payment under the employment agreement, which Southard refused. M&S commenced this action against Southard, seeking damages for breach of contract, and against Ulster, seeking damages for tortious interference with contract. M&S settled with Ulster prior to trial.

After a nonjury trial, the Supreme Court, in a decision, found that Southard breached an enforceable employment agreement and that M&S was entitled to $224,470.35 in liquidated damages for all of the clients that followed Southard from M&S to Ulster. The Supreme Court also found that Article V, Section 4, of the employment agreement was an enforceable liquidated damages clause, not an unenforceable penalty, because there was a "reasonable relationship" between the amount of liquidated damages due under the clause and "the damages

suffered by M&S due to the departure of its customer base to Ulster." Southard moved, inter alia, to set aside the decision pursuant to CPLR 4404 (b). In the order appealed from, the Supreme Court denied, inter alia, that branch of the motion.

Employment contracts that require compensation for clients that follow employees to a new employer fall within the ambit of noncompete clauses, and are carefully scrutinized by courts (*see BDO Seidman v Hirshberg*, 93 NY2d 382, 388 [1999]). Courts apply a three-prong test for balancing the competing interests of the employer, the employee, and the public: the "restraint is reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (*id.* at 388-389). "A violation of any prong renders the covenant invalid" (*id.* at 389). "[T]he application of the test of reasonableness of employee restrictive covenants focuses on the particular facts and circumstances giving context to the agreement" (*id.* at 390).

Here, M&S did not have a protectable interest in the Fitzharris clients because those clients' goodwill was acquired through their prior personal relationship with Southard and not through the expenditure of M&S resources (*see id.* at 393). Therefore, enforcement of the restrictive covenant as to the Fitzharris clients would violate the first prong of the *BDO Seidman* test and result in the misappropriation by M&S of the goodwill created and maintained through Southard's own efforts (*see id.*). Contrary to M&S's assertions, the insurance industry is not unique and its investment in Southard did not create a protectable interest (*cf. Riedman Corp. v Gallager*, 48 AD3d 1188 [2008]). Accordingly, the restrictive covenant is invalid as to the Fitzharris clients.

Contrary to Southard's further arguments, the employment agreement is otherwise enforceable. Courts have the power to sever restrictive covenants, granting partial enforcement to the extent that they do not violate the three-prong test (*see BDO Seidman v Hirshberg*, 93 NY2d at 391-392, 394). Here, the restrictive covenant must be severed so as to exclude the Fitzharris clients.

The Supreme Court erred in awarding M&S damages without a trial on that issue. At trial, M&S submitted a schedule of values, which was alleged to show the identity and commissions of the Fitzharris and non-Fitzharris clients. Southard's counsel began to question the representative of M&S regarding damages, but the Supreme Court stopped this line of questioning. Southard should have been given the op-

portunity to test the accuracy of the schedule of values, upon . which the court relied in determining the amount of the award to which M&S was entitled (*see Bitzios v Michelakis*, 89 AD3d 779 [2011]). Further, the parties disagree about the calculation of damages under Article V, Section 4, of the employment agreement, which is ambiguous and cannot be interpreted without additional evidence because it permits different inferences, and fairminded and reasonable persons may disagree as to its meaning and effect (*see Lamb v Norcross Bros. Co.*, 208 NY 427, 431 [1913]). Therefore, a trial on the issue of damages must be held as to the non-Fitzharris clients.

"Whether [an] early termination fee represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances" (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 379-380 [2005]). "The party challenging a liquidated damages clause must establish either that actual damages were readily ascertainable at the time the contract was entered into or that the liquidated damages were conspicuously disproportionate to foreseeable or probable losses" (*United Tit. Agency, LLC v Surfside-3 Mar., Inc.*, 65 AD3d 1134, 1135 [2009]). Here, upon remittal, the Supreme Court must determine anew whether the post-termination sharing provision was an unenforceable penalty rather than an enforceable liquidation of damages clause based on the evidence adduced at the damages trial with respect to the non-Fitzharris clients (*compare Weiser LLP v Coopersmith*, 51 AD3d 583 [2008], *with Fingerlakes Chiropractic v Maggio*, 269 AD2d 790 [2000]). Balkin, J.P., Leventhal, Roman and LaSalle, JJ., concur.