Colgate Inn, LLC v Eberhardt, LLC (2022 NY Slip Op 03784)

Colgate Inn, LLC v Eberhardt, LLC

2022 NY Slip Op 03784

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

533412
[*1]Colgate Inn, LLC, Respondent,
v
Eberhardt, LLC, Appellant. (And a Third-Party Action.)

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Hinman, Howard & Kattell, LLP, Binghamton (Marina Resciniti of counsel), for appellant.
Bond, Schoeneck & King, PLLC, Syracuse (J.P. Wright of counsel), for respondent.

Lynch, J.P.
Appeal from an order of the Supreme Court (Cerio, J.), entered April 19, 2021 in Madison County, which, among other things, granted plaintiff's cross motion for summary judgment dismissing defendant's counterclaims.
Plaintiff owns the Colgate Inn — a historic hotel, banquet venue and restaurant in Madison County that has been operating for over 95 years and is adjacent to Colgate University, which is the sole member of plaintiff. In 2004, the parties entered into a lease agreement under which defendant, in exchange for rental payments, took over operation of the inn. Under the 2004 lease, defendant was responsible "for the timely payment of all operating expenses" and was entitled to "retain all operating profits."
In 2006, the parties executed a "Point of Sale and Property Management System Agreement" (hereinafter the 2006 agreement) regarding the purchase of a computer system to store the inn's reservation information. Under the agreement, plaintiff was required to reimburse defendant for necessary deposits to secure the system, "[a]ll components" of which were described in Exhibit A. Exhibit A listed "Epitome" as the system contemplated to be purchased. Defendant, in turn, was responsible, "at its sole cost and expense," for all repairs, replacements and system upgrades, while plaintiff agreed to insure the property. Pertinent here, the agreement specified that, upon deposit reimbursement to defendant, plaintiff would "become owner of said system and as such w[ould] be given access to all agreed upon data, passwords and security codes" upon completion of the tenancy.
Thereafter, in 2010, the parties entered into a new lease agreement under which defendant continued operation of the inn in exchange for an annual rent payment to plaintiff plus percentages of gross food and beverage sales and certain room sales. The lease could be terminated upon 180 days written notice and, as relevant here, obligated defendant to maintain books and records pertaining to "each transaction made at or from the [p]remises" for a defined period of time. Plaintiff had the right to access such records during the retention period and "to require [defendant], its agents and employees, to provide such information or explanation with respect to such books and records as may be necessary for a proper examination and review thereof." The 2010 lease was later amended several times, but the record-keeping provisions remained intact.
By 2015, the Epitome system needed to be updated, prompting defendant to purchase a new software system called "Atrio" to store the inn's reservation data. Once Atrio went live, information from the former Epitome system was transferred onto Atrio. The parties executed a letter agreement, dated February 22, 2016 (hereinafter the 2016 letter agreement), governing their rights and obligations with respect to the Atrio system. Pursuant thereto, plaintiff provided defendant with a $95,000 credit — to be applied against defendant's [*2]rental arrearages — "for certain investment in computer upgrades . . . for the benefit of [plaintiff] as further described in Exhibit A." The computer investments described in that exhibit included, among other things, "Micros System Update," "Atrio Implementation" and "Atrio Contracted Payment." In consideration for the credit, defendant agreed to transfer "all rights, title, and interests in the [p]roperty to [plaintiff]," who would assume the status of "sole legal and beneficial owner of the [p]roperty free and clear of any claim, lien, security interest, option or other charge or encumbrance." The computer investments listed in Exhibit A were encompassed within the definition of "the [p]roperty" as set forth in the agreement.
In 2017, plaintiff decided to operate the inn under a management contract instead of a lease arrangement and solicited bids for that purpose. Defendant's president, William "Ben" Eberhardt III, maintains that a representative of plaintiff informed him that defendant was likely to win the management contract if he made certain improvements to the inn. Although Eberhardt submitted a bid for the management contract after making certain improvements, plaintiff ultimately awarded the contract to third-party defendant CH New York, LLC (hereinafter CH) and, by notice issued in December 2017, terminated defendant's lease, effective July 1, 2018.
Plaintiff thereafter requested that defendant provide it with data stored on the Atrio system regarding upcoming guest reservations between July 2018 and September 2018, along with information about banquet events booked for that period, which defendant maintained internally. After defendant refused to turn over the requested information without further compensation, plaintiff commenced this action to compel defendant to do so and for breach of contract related to unpaid rent. Defendant answered and asserted counterclaims for tortious interference with a contractual relationship, conversion, misappropriation of trade secrets, unfair competition, unjust enrichment, breach of contract and fraud.[FN1] Supreme Court granted plaintiff a preliminary injunction compelling defendant to turn over the requested information and plaintiff thereafter moved for partial summary judgment on its breach of contract claim. Defendant cross-moved for, among other things, partial summary judgment on its unjust enrichment counterclaim, contending that it "rightfully owns the confidential and proprietary data and information contained within the [Atrio] [s]ystem," as well as the banquet information stored internally, and plaintiff would be unjustly enriched by retaining the "over $2[,000,000] worth of anticipated revenue from prospective reservations and events at the . . . [i]nn" if it was entitled to keep such information without compensating defendant. In February 2019, Supreme Court granted plaintiff's motion, denied defendant's cross motion and dismissed defendant's counterclaim for breach of contract[*3].
Following additional discovery, defendant again moved for summary judgment on its unjust enrichment counterclaim and plaintiff cross-moved for summary judgment dismissing defendant's remaining counterclaims. By decision and order entered April 19, 2021, Supreme Court, in a comprehensive decision, denied defendant's motion and granted plaintiff's cross motion. Defendant appeals from the April 2021 order.
We affirm. Contrary to defendant's contention, Supreme Court properly dismissed the unjust enrichment counterclaim pertaining to the future reservation data stored on Atrio and the upcoming banquet information maintained internally. "'[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties'" (Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d 1137, 1139 [2018], quoting Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]; see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]). Accordingly, no such claim lies "where the parties have entered into a contract that governs the subject matter" in dispute (Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d at 1139 [internal quotation marks and citation omitted]; see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d at 388-389).
No claim for unjust enrichment lies as it pertains to the information at issue because the parties' rights and obligations with respect thereto are governed by written agreements. As for the reservation data maintained on Atrio, we recognize that Exhibit A to the 2006 agreement listed the Epitome system as the one contemplated to be purchased by defendant. However, the 2006 agreement did not delineate a specific system to which it would exclusively apply, contemplated "replacements" and "system upgrades"[FN2] and tethered defendant's obligation to provide plaintiff with access to the agreed-upon data to the "completion of [its] tenancy," indicating that this was a continuing obligation. Based upon the foregoing language, Supreme Court reasonably interpreted the 2006 agreement as not being limited solely to the data maintained on the Epitome system, but, rather, as also applying to the data maintained on any replacement system, including Atrio.
To the extent that the 2006 agreement is ambiguous in this respect, the 2016 letter agreement also supports plaintiff's position that it is the owner of the Atrio reservation data at issue. Under the 2016 letter agreement, plaintiff provided funding for the purchase of the updated Atrio system, with the agreement expressly stating that the purchase would be "for the benefit of [plaintiff]." The 2016 agreement broadly transferred "all rights, title, and interests in the [p]roperty to [plaintiff]," who would become "the sole legal and beneficial owner of the [p]roperty free and clear of any claim, lien, security interest, option or other charge or encumbrance[*4]" (emphasis added). Although the 2016 letter agreement did not set forth the parties' rights with respect to the data stored on Atrio, given the broad transfer of ownership to plaintiff of "all rights, title, and interests" in the computer investments, we reject defendant's assertion that plaintiff's ownership interest is limited solely to the physical Atrio hardware and does not encompass the data stored on the system.[FN3]
In any event, the 2010 lease plainly required defendant to share with plaintiff the future reservation data stored on Atrio and the upcoming banquet booking information that it maintained internally. To that end, the 2010 lease obligated defendant to operate the premises "in [a] manner befitting a first class [i]nn and restaurant" and to "use the [p]remises solely" for that purpose. Defendant was permitted to retain "all operating profits" in exchange for an annual rent payment to plaintiff, which included additional rent in the amount of 5% of the gross food and beverage sales. The record-keeping provisions of the 2010 lease required defendant to maintain books and records pertaining to "each transaction made at or from the [p]remises" for "at least seven . . . years from the end of the period to which they are applicable." Such records were to be kept "open at all reasonable times during the aforesaid retention period to the inspection of [plaintiff] . . . who shall have full and free access to [them]."
While we recognize that defendant expended energy and resources to obtain the reservations and bookings at issue, it had a continuing obligation to do so under the terms of the 2010 lease. The lease broadly granted plaintiff access to defendant's records regarding the inn's transactions and, contrary to defendant's contention, nothing in the language limited this right to already-serviced reservations or conditioned defendant's disclosure obligation on the receipt of compensation. It follows that, because the rights and obligations of the parties with respect to the requested information are expressly governed by contracts, no unjust enrichment counterclaim lies and Supreme Court properly granted plaintiff's motion seeking dismissal thereof (seeJeda Capital-56, LLC v Village of Potsdam, 198 AD3d 1211, 1217 [2021], lv denied 38 NY3d 902 [2022]; Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d at 1140).[FN4]
In light of our finding that plaintiff was entitled to the data stored on the Atrio system pursuant to the parties' respective agreements, dismissal of defendant's counterclaim for conversion in this regard was also warranted (see generally Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]; Ciprich v Atwood, 163 AD3d 1332, 1334 [2018]). As for defendant's claim of conversion with respect to the banquet information stored internally, even if we were to agree with defendant that it owned such information, it failed to proffer sufficient proof that plaintiff exercised unauthorized dominion [*5]and control thereover (see Giardini v Settanni, 159 AD3d 874, 875 [2018]). In fact, such a finding is precluded by the disclosure requirements of the 2010 lease.
Defendant's conversion claim also encompasses certain tangible property — including excess food and kitchen equipment — that Eberhardt left at the inn following the lease termination. Defendant maintains that plaintiff has not allowed it to retrieve such property, proffering, among other things, an affidavit from Eberhart stating that, the day after he was required to leave the inn, he "called the [i]nn with the intention of returning to collect [defendant's] [p]roperty and was told not to come and further that security was onsite." This assertion is insufficient to demonstrate a triable issue of fact as to whether plaintiff exercised unauthorized dominion and control over the property or otherwise interfered with it, for it neither identifies the person with whom Eberhart allegedly spoke nor reveals whether this individual was one of plaintiff's representatives. In any event, there is ample proof that CH's representatives offered, on several occasions, to grant Eberhardt access to the inn to retrieve his property, to no avail. In these circumstances, there is simply no basis upon which to allow the conversion claim to proceed against plaintiff as it pertains to the tangible property that Eberhardt left behind (see generally Komolov v Segal, 144 AD3d 487, 488 [2016]).
Nor did Supreme Court err in dismissing defendant's counterclaim for misappropriation of trade secrets, which is directed at the future reservation data stored on Atrio. Such a claim requires proof of: "(1) possession of a trade secret; and (2) use of that trade secret by the [plaintiff] in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means" (Tri-Star Light. Corp. v Goldstein, 151 AD3d 1102, 1106 [2017] [internal quotation marks and citation omitted]; see E.J. Brooks Co. v Cambridge Sec. Seals, 31 NY3d 441, 452 [2018]). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it" (E.J. Brooks Co. v Cambridge Sec. Seals, 31 NY3d at 453 [internal quotation marks, brackets and citation omitted]; accord Moser v Devine Real Estate, Inc. [Florida], 42 AD3d 731, 736 [2007]). "An essential prerequisite to legal protection against the misappropriation of a trade secret is the element of secrecy" (Tri-Star Light. Corp. v Goldstein, 151 AD3d at 1106 [internal quotation marks and citations omitted]).
We agree with Supreme Court that defendant has no viable counterclaim for misappropriation of trade secrets. First, plaintiff could not have misappropriated information that it already owned pursuant to enforceable contracts. Second, the information stored on the Atrio system essentially amounts to customer lists, which do [*6]not constitute trade secrets (see H. Meer Dental Supply Co. v Commisso, 269 AD2d 662, 664 [2000]). Such information would become public when guests arrived at the inn for their bookings and, therefore, no business advantage inured to defendant in keeping this information secret. Given the inn's proximity to and association with Colgate University, this is also not a situation where the inn's customers "are not known in the trade and are discoverable only by extraordinary efforts" (Empire Farm Credit v Bailey, 239 AD2d 855, 856 [1997]; see H. Meer Dental Supply Co. v Commisso, 269 AD2d at 664). As the record does not demonstrate any triable issue of fact in this regard, Supreme Court properly dismissed this counterclaim (see Moser v Devine Real Estate, Inc. [Florida], 42 AD3d at 736; see generally Marietta Corp. v Fairhurst, 301 AD2d 734, 738-739 [2003]).
With respect to defendant's counterclaim for unfair competition, such cause of action requires a showing "that the public is likely to confuse the defendant's product or service with that of the plaintiff" (Camelot Assoc. Corp. v Camelot Design & Dev., 298 AD2d 799, 800 [2002] [internal quotation marks and citation omitted]). "The basic issue . . . is whether the acts complained of are fair or unfair" and "requires the [defendant] to prove some element of bad faith" (Capitaland Heating & Cooling v Capitol Refrig. Co., 134 AD2d 721, 722 [1987] [internal quotation marks and citation omitted]; see Camelot Assoc. Corp. v Camelot Design & Dev., 298 AD2d at 800). No such claim lies with respect to the future reservation data maintained on Atrio, as plaintiff could not have engaged in unfair competition by using data it already owned (see Zinter Handling, Inc. v General Elec. Co., 101 AD3d 1333, 1337 [2012]). As for the banquet information stored internally, it was not unfair for plaintiff to obtain information related to banquet bookings that its new management company would be expected to service at its property at a future date. Any claim of bad faith in this regard is negated by the evidence that plaintiff was amenable to permitting defendant to retain event bookings that it could feasibly service elsewhere. There is simply no showing of unfair dealing or bad faith on plaintiff's part and, accordingly, defendant's counterclaim in this regard was properly dismissed (see generally Zinter Handling, Inc. v General Elec. Co., 101 AD3d at 1337; Rochester Linoleum & Carpet Ctr., Inc. v Cassin, 61 AD3d 1201, 1204 [2009]).
We further agree with Supreme Court that defendant did not proffer sufficient proof to permit the tortious interference counterclaim to proceed to trial. "'The elements of [such] a cause of action . . . are: (1) the existence of a valid contract between the [defendant] and a third party, (2) the [plaintiff's] knowledge of that contract, (3) the [plaintiff]'s intentional procurement of a third-party's breach of that contract without justification, and (4) damages'" (Tri-Star Light[*7]. Corp. v Goldstein, 151 AD3d at 1105, quoting Nagan Constr., Inc. v Monsignor McClancy Mem. High Sch., 117 AD3d 1005, 1006 [2014]). Defendant claims that CH, acting as plaintiff's agent, "knowingly interfered with the contractual relationship that existed between [defendant]" and its employee, Jana Truett-Crouch, by soliciting from her defendant's employee handbook, certain HR records and information regarding upcoming event bookings in exchange for her continued employment at the inn following the termination of defendant's tenancy. Not only is there inadequate evidence that CH or plaintiff knew of a contract between Truett-Crouch and defendant to keep such documents and information confidential or intentionally induced her to breach such an obligation, but defendant has failed to sufficiently demonstrate damage flowing from CH's retention thereof.[FN5] Given the lack of adequate verified proof in this regard, Supreme Court appropriately dismissed the counterclaim for tortious interference (see generally O'Connor v Shultz, 166 AD3d 1104, 1106 [2018]).
Finally, Supreme Court did not err in granting plaintiff's motion for summary judgment dismissing defendant's counterclaim for fraud, which was based upon plaintiff's purported representation to Eberhardt in 2017 that defendant would likely be awarded the management contract if he made certain improvements to the inn. "The elements of fraud include a misrepresentation that is false and that the [party making the representation] knows is false, made to induce the other party to rely on it, justifiable reliance on the misrepresentation by the other party, and injury" (Sutton v Hafner Valuation Group, Inc., 115 AD3d 1039, 1041 [2014] [internal quotation marks and citations omitted]; see Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 827 [2016]; Hidden Pond Schodack, LLC v Hidden Pond Homes, Inc., 189 AD3d 1792, 1795 [2020]). Although the record reveals a dispute as to whether one of plaintiff's representatives told Eberhardt that he was "likely" to be awarded the management contract if he made certain improvements to the inn, such a statement, even if made, does not amount to a definitive promise. In any event, the record demonstrates that plaintiff did consider Eberhardt's application for the management bid but ultimately awarded the contract to a different entity based upon defendant's low rankings in the bid process and plaintiff's legitimate business considerations. Stated succinctly, defendant has proffered no evidence of a false misrepresentation on plaintiff's part made to induce defendant's reliance (see generally Lewis v DiMaggio, 151 AD3d 1296, 1299 [2017]; Matter of Klingman, 60 AD3d 949, 950 [2009], lv denied 12 NY3d 715 [2009]).
For all the foregoing reasons, Supreme Court properly granted plaintiff's motion for summary judgment dismissing defendant's counterclaims. Defendant's remaining contentions, to the extent not expressly addressed herein, have been considered and [*8]found lacking in merit.
Clark, Aarons, Colangelo and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Defendant also commenced a third-party action against CH, which is not the subject of this appeal.

Footnote 2: The record makes clear that Atrio was purchased as an upgrade to Epitome.

Footnote 3: We note that, during his deposition, Eberhardt confirmed that the $95,000 credit provided to defendant for the purchase of Atrio included the purchase of hardware, software and "the storage of history." He further noted that "Atrio Implementation" as set forth in Exhibit A to the 2016 letter agreement encompassed more than simply hardware.

Footnote 4: In any event, even if we were to conclude that the respective agreements did not unequivocally govern the parties' rights and obligations over the requested information, we would find, as a matter of law, that permitting plaintiff to access the requested information without compensation does not amount to unjust enrichment.

Footnote 5: Eberhardt's assertion during his deposition that defendant was damaged by plaintiff retaining information about upcoming event bookings insofar as defendant could have serviced these reservations elsewhere is far too speculative to warrant a trial on the matter.