Davis v Marshall & Sterling, Inc. (2023 NY Slip Op 03050)

Davis v Marshall & Sterling, Inc.

2023 NY Slip Op 03050

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

534011
[*1]Joseph A. Davis et al., Appellants-Respondents,
v
Marshall & Sterling, Inc., Defendant and Third-Party Plaintiff Respondent-Appellant; NXG Insurance Agency Group, LLC, Third-Party Defendant-Appellant-Respondent.

Calendar Date:February 22, 2023

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ.

McCarter & English, LLP, New York City (Joseph J. Cherico of counsel) and Biancone & Wilinsky, LLP, New York City (Louis Biancone of counsel), for appellants-respondents.
Keidel, Weldon & Cunningham, LLP, White Plains (Christopher B. Weldon of counsel), for defendant and third-party plaintiff respondent-appellant.

Reynolds Fitzgerald, J.
Cross-appeals from an order of the Supreme Court (Lisa M. Fisher, J.), entered August 17, 2021 in Ulster County, which denied plaintiffs' and third-party defendant's motion for, among other things, summary judgment dismissing the third-party complaint and partially granted defendant's cross-motion for, among other things, summary judgment on the issue of liability.
Plaintiff Susan L. Provost began employment at defendant's insurance company in 1991. She was promoted to an account executive in 2014, at which time she executed an employment agreement with defendant that contained both nonsolicitation and posttermination commission sharing provisions. Plaintiff Joseph A. Davis was hired by defendant in 2010 and signed an employment agreement containing similar provisions. Plaintiffs worked within defendant's specialty risk division and specialized in servicing customers with jumbo accounts. This term referred to accounts involving large risk and annual premiums exceeding $250,000. In November 2017, defendant determined that it would no longer write new jumbo accounts and advised plaintiffs of its decision. On February 23, 2018, under disputed circumstances, plaintiffs left their employment with defendant. Approximately one month later, Davis founded third-party defendant NXG Insurance Agency Group, LLC (hereinafter NXG) and Provost joined NXG as its vice president and chief operating officer. Thereafter, nine former customers of defendant followed plaintiffs and became customers of NXG. The circumstances of plaintiffs' employment termination and customer retention are disputed; plaintiffs allege they were discharged involuntarily without cause and the customers voluntarily followed them, and defendant alleges that plaintiffs resigned and solicited their former clients.
The commission sharing provisions of plaintiffs' employment agreements provide that, in the event that clients of defendant become plaintiffs' clients, plaintiffs shall pay a percentage of that client's annualized gross commissions. Defendant demanded payment under this provision, and plaintiffs refused to pay. In September 2018, plaintiffs commenced this action seeking a declaratory judgment that the nonsolicitation and posttermination commission sharing provisions are unenforceable. Defendant answered asserting various affirmative defenses and counterclaims against plaintiffs, including breach of the agreements. Defendant also commenced a third-party action against NXG for tortious interference.
In December 2020, plaintiffs and NXG moved for summary judgment seeking dismissal of the counterclaims and third-party complaint and a declaration finding the provisions unenforceable. Likewise, defendant cross-moved for summary judgment requesting dismissal of the complaint and imposition of liability against plaintiffs and NXG and damages attendant thereto. Supreme Court denied plaintiffs' and NXG's motion for summary judgment, partially granted defendant's cross-motion for summary judgment [*2]on the issue of liability and ordered a trial on damages. These cross-appeals by plaintiffs, defendant and NXG ensued.
"As longstanding case law reflects, summary judgment is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action" (O'Toole v Marist Coll., 206 AD3d 1106, 1107-1108 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see EDW Drywall Constr., LLC v U.W. Marx, Inc. 189 AD3d 1720, 1721-1722 [3d Dept 2020]). New York has adopted a common-law standard of reasonableness in determining the validity of employee agreements restricting an individual's right to work or compete (see BDO Seidman v Hirshberg, 93 NY2d 382, 390 [1999]). Such an agreement is enforceable "only if it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee" (Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d 805, 806 [3d Dept 2004] [internal quotation marks and citation omitted], lv denied 3 NY3d 612 [2004]; see Cliff v R.R.S. Inc., 207 AD2d 17, 19 [3d Dept 1994]).
Initially, relying on Post v Merrill Lynch, Pierce, Fenner & Smith (48 NY2d 84 [1979]), plaintiffs and NXG contend that defendant's termination of plaintiffs' employment without cause voided the restrictive covenants contained in the employment agreements. Supreme Court found that Post did not apply to the case at bar and, as such, the manner of their termination is irrelevant to the issue of the enforceability of the agreements. We agree. Post involved the forfeiture of pension plan benefits and we find that its holding is limited thereto. Our reading of Post is based on the Court of Appeals taking "into account the declaration of a strong public policy against forfeiture of employee benefits manifested by the Employee Retirement Income Security Act of 1974 (ERISA) (US Code, tit 29, § 1001 et. seq.)" (Post v Merrill Lynch, Pierce, Fenner & Smith, 48 NY2d at 88; see Morris v Schroder Capital Mgt. Intl., 7 NY3d 616, 620-621 [2006]). "[Plaintiffs] misread[ ] Post to stand for the proposition that no form of restrictive covenant is enforceable following a termination without cause. This reading ignores the context and issue in Post — receipt of postemployment benefits that the employer was contractually bound to give its former employee"(Kelley-Hilton v Sterling Infosystems Inc., 426 F Supp 3d 49, 58-59 [SD NY 2019]). Because plaintiffs do not assert that defendant denied them access to any postemployment benefits that they are entitled to receive, Post is inapplicable and the circumstances of their terminations are irrelevant to the question of enforceability of the employment agreements (see [*3]id.; Wise v Transco, Inc., 73 AD2d 1039, 1039 [4th Dept 1980]).[FN1] The position taken by the concurrence/dissent, namely that the enforceability of these restrictive covenants is contingent on the circumstances of plaintiffs' termination, amounts to a de facto expansion of the holding in Post, which we decline to do.[FN2]
Turning to the issue of the enforceability of the agreements, "the application of the test of reasonableness of employee restrictive covenants focuses on the particular facts and circumstances giving context to the agreement" (BDO Seidman v Hirshberg, 93 NY2d at 390). While such agreements are generally not favored, they can be "justified by the employer's need to protect itself from unfair competition by former employees" (Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d at 806). "The employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment" (BDO Seidman v Hirshberg, 93 NY2d at 392 [citations omitted]). Here, when plaintiffs joined defendant's insurance agency, neither had any prior experience in the insurance field, they were not licensed agents, nor did they have any clients or books of business of their own. As to the clients in question here, they were solicited, developed and serviced by defendant. As such, the accounts and clients are the product of defendant's efforts, financial expenditures and goodwill, all of which defendant has a legitimate interest in protecting. We do not agree with the concurrence/dissent's characterization that defendant "abandoned" its jumbo account clients. While it is undisputed that defendant ceased soliciting these types of clients, it continued to service the clients, thus maintaining a tangible interest in these accounts. As Supreme Court correctly found, based on the submission of the agreements, affidavits and deposition transcripts and the absence of material issues of fact, defendant has a valid business interest to protect and is permitted to enforce the agreements. Accordingly, Supreme Court properly denied plaintiffs' and NXG's motion for summary judgment and properly granted defendant's summary judgment cross-motion (see BDO Seidman v Hirshberg, 93 NY2d at 393-394; Marshall & Sterling, Inc. v Southard, 148 AD3d 1009, 1011 [2d Dept 2017]).
The issue then becomes whether the terms of the agreements — that provide for liquidated damages — are reasonable. "As a general matter parties are free to agree to a liquidated damages clause provided that the clause is neither unconscionable nor contrary to public policy" (172 Van Duzer Realty Corp. v Globe Alumni Student Assistance Assn., Inc., 24 NY3d 528, 536 [2014] [internal quotation marks and citations omitted]). "Liquidated damages that constitute a penalty, however, violate public policy, and are unenforceable. A provision which requires damages grossly [*4]disproportionate to the amount of actual damages provides for a penalty and is unenforceable" (Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc., 36 NY3d 69, 75 [2020] [internal quotation marks, brackets and citations omitted]). "A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation" (Pyramid Ctrs. & Co. v Kinney Shoe Corp., 244 AD2d 625, 627 [3d Dept 1997] [internal quotation marks and citations omitted]).
As the concurrence/dissent correctly points out, there is a significant difference in the percentage of commissions demanded by each contract. Here, Davis' posttermination commission sharing provision states that if a client voluntarily follows him within 24 months immediately following his termination, he will be required to pay an amount equal to 50% of annualized gross commissions for the first 36 months he writes the account. Provost's provision states that if during the two years following her termination a client follows her, she will be obligated to pay an amount equal to 150% of the annualized gross commission value of the accounts to be paid in equal monthly installments over a period of 36 months. There is no claim that circumstances of the parties were identical at the time of signing. Moreover, at the time the parties executed the contracts, it would have been impossible to ascertain the amount of actual losses since the number of clients leaving and the value of their accounts could not be predicted with any accuracy. Therefore, the question distills to whether the liquidated damages clause in each of the contracts amounts to a legitimate estimate of the just compensation of loss, or an unenforceable penalty (see Trustees of Columbia University in the City of N.Y. v D'Agostino Supermarkets, Inc., 36 NY3d at 75). As Supreme Court correctly found, there are material issues of fact surrounding this question, and a trial on damages is necessary (see Marshall & Sterling, Inc. v Southard, 148 AD3d at 1011; Lawas v Cole, 116 AD2d 936, 937 [3d Dept 1986]).
We further agree with Supreme Court that material issues of fact exist related to defendant's third-party tortious interference claim against NXG. The elements of the cause of action for tortious interference with a contract are: (1) the existence of a valid contract between defendant and a third party, (2) NXG's knowledge of that contract, (3) NXG's intentional procurement of a third-party's breach of that contract and (4) damages (see Colgate Inn, LLC v Eberhardt, LLC, 206 AD3d 1197, 1204 [3d Dept 2022]; Carr v Wegmans Food Mkts., Inc., 182 AD3d 667, 669 [3d Dept 2020]). The third-party complaint alleges that NXG knew of defendant's employment contracts with Davis and Provost and encouraged them to breach the agreements through solicitation of its customers and by using its trade [*5]secrets and proprietary information and, further, that Davis and Provost did so in the course of their employment as principals of NXG and for the benefit of NXG. Defendant provided an affidavit by its employee and a deposition transcript of a former customer that former customers were solicited. In contrast, NXG, Davis and Provost submitted affidavits from their clients (defendant's former clients) that they were not solicited. This presents an issue of fact as to whether the agreements were breached. Accordingly, summary judgment with reference to tortious interference was properly denied (see Lawley Serv., Inc. v Progressive Weatherproofing, Inc., 30 AD3d 977, 978 [4th Dept 2006]; Gill Farms v Darrow, 256 AD2d 995, 997 [3d Dept 1998]).
Aarons and Ceresia, JJ., concur.
Egan Jr., J. (concurring in part and dissenting in part).
We agree with the decision of the majority with the exception of its conclusion that defendant was entitled to partial summary judgment on the issue of liability. Because we are persuaded that material questions of fact exist with regard to the enforceability of the restrictive covenants imposed upon plaintiffs, we respectfully dissent.
To begin, we agree with the majority that Post v Merrill Lynch, Pierce, Fenner & Smith (48 NY2d 84 [1979]), which involves the validity of a restrictive covenant following a termination without cause where enforcement of the covenant would result in the forfeiture of pension benefits to which the employee would otherwise be entitled, does not apply under the facts of this case (see Hyde v KLS Professional Advisors Group, LLC, 500 Fed Appx 24, 26 [2d Cir 2012]; Morris v Schroder Capital Mgt. Intl., 7 NY3d 616, 620-621 [2006]; Frank v Metalico Rochester, Inc., 174 AD3d 1407, 1412 [4th Dept 2019]; Brown & Brown, Inc. v Johnson, 115 AD3d 162, 170 [4th Dept 2014], revd on other grounds 25 NY3d 364 [2015]; compare Buchanan Capital Mkts., LLC v DeLucca, 144 AD3d 508, 508 [1st Dept 2016]; Grassi & Co., CPAs, P.C. v Janover Rubinroit, LLC, 82 AD3d 700, 702 [2d Dept 2011]). We do not agree with the broader assertion of the majority, however, that the circumstances under which plaintiffs left defendant's employment "are irrelevant to the question of enforceability of the" covenants involved in this case.
Restrictive covenants like the ones here are "a form of ancillary employee anti-competitive agreement that will be carefully scrutinized by the courts" to assess whether the restraint imposed is reasonable and enforceable (BDO Seidman v Hirshberg, 93 NY2d 382, 388 [1999]). "A restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public," and the burden rests upon defendant, the entity seeking to enforce the restraint, to demonstrate that all three of those prongs have been met (id. at 388-389 [emphasis and citations omitted]; accord [*6]Brown & Brown, Inc. v Johnson, 25 NY3d 364, 369 [2015]; see Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d 805, 806 [3d Dept 2004], lv denied 3 NY3d 612 [2004]). Further, because the reasonableness of the restraint "must be measured by the circumstances and context in which enforcement is sought," the facts surrounding the employee's separation from employment are relevant (Gelder Med. Group v Webber, 41 NY2d 680, 684 [1977]; see BDO Seidman v Hirschberg, 93 NY2d at 390; Marshall & Sterling, Inc. v Southard, 148 AD3d 1009, 1011 [2d Dept 2017]; Goodman v New York Oncology Hematology, P.C., 101 AD3d 1524, 1526 [3d Dept 2012]).
With that framework in mind, although the covenants executed by plaintiffs differed somewhat, they both contemplated that plaintiffs would be barred from soliciting or transacting business with some or all of defendant's customers for a period of two years following the termination of their employment. The covenants further provided that, if one of the customers did take their business to plaintiffs, plaintiffs would pay defendant a percentage amount of commissions earned from the customer for a set period.[FN3] The parties agree that plaintiffs' work for defendant essentially involved developing and handling "[j]umbo [a]ccounts" for customers who faced large risks requiring substantial insurance coverage and who paid insurance premiums of at least $250,000 a year. Plaintiffs averred that, after defendant had decided to stop handling jumbo accounts and had no further need for plaintiffs' services, its management indicated that they and other insurance agents servicing the accounts were free to seek employment elsewhere. Plaintiffs further aver that defendant then terminated their employment without prior notice and without cause, after which they worked as insurance agents elsewhere and some of defendant's former customers sought out their services. In other words, plaintiffs set forth facts suggesting that defendant had abandoned the customer base that they had serviced, terminated their employment without cause, and then sought enforcement of the restrictive covenants to recover a percentage of commissions earned from customers it no longer wanted.
Defendant, to be sure, provided conflicting evidence regarding the circumstances surrounding plaintiffs' departure and its ongoing interest in servicing jumbo accounts. Viewing the foregoing evidence in the light most favorable to plaintiffs as the nonmoving parties (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]), however, we are satisfied that questions of fact exist, at a minimum, as to whether the restrictive covenants serve a legitimate employer interest so as to render them reasonable and enforceable under the circumstances presented. We would therefore deny defendant's motion for summary judgment (see Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 499-500 [1977]; Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d at 807-808; Wise v Transco[*7], Inc., 73 AD2d 1039, 1039 [4th Dept 1980]; cf. BDO Seidman v Hirshberg, 93 NY2d at 392).
Garry, P.J., concurs.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although the First and Second Departments have read Post more broadly (see Buchanan Capital Mkts., LLC v DeLucca, 144 AD3d 508, 508 [1st Dept 2016]; Grassi & Co., CPAs, P.C. v Janover Rubinroit, LLC, 82 AD3d 700, 702 [2d Dept 2011]), we decline to follow those Departments as their decisions do not examine Post in detail nor account for the Court of Appeals subsequent decision in Morris (see Kelley-Hilton v Sterling Infosystems Inc., 426 F Supp 3d at 59 n 6).

Footnote 2: Moreover, the cases cited in support of the concurrence/dissent's position are distinguishable. In Gelder Med. Group v Webber (41 NY2d 680 [1977]), the employment contract itself specified the reasons for termination. Therefore, the Court discussed the reasons for termination to determine if the employee's termination was in compliance with the contract. In Goodman v New York Oncology Hematology, P.C. (101 AD3d 1524 [3d Dept 2012]), the employment contract stated that the restrictive covenant would not apply if the employee was terminated without cause, hence the reason for the Court's discussion of the employee's separation. The remaining two cases cited by the majority do not consider or discuss the reasons for the employee's termination. Moreover, in Marshall & Sterling, Inc. v Southard (148 AD3d 1009, 1011 [2d Dept 2017]), not only did the Second Department not consider the reasons for termination, the Court held that the provision was an enforceable liquidated damages clause.

Footnote 3: 50% of commissions in the case of plaintiff Joseph A. Davis, and 150% of commissions in the case of plaintiff Susan L. Provost.